OPINION
The following appeal arises from the decision of the Mahoning County Court of Common Pleas granting summary judgment in that no genuine issue as to any material fact was felt to exist as related to allegations of tortious interference with a contract and tortious interference with a business relationship. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On July 7, 1995, Reali, Giampetro Scott, a professional corporation, hereinafter referred to as appellant, filed a complaint against Society Bank, appellee, sounding in tortious interference with a contract. Appellant alleged that it had a longstanding business relationship with John A. DePizzo, Jr., Inc. ("DePizzo") which appellee intentionally, maliciously and with wanton disregard interfered with when it conditioned the grant of a ten million dollar ($10,000,000) loan/line of credit to DePizzo on the use of a C.P.A. firm recommended by appellee. Fearing that the loan/line of credit would not be granted, appellant argued that DePizzo terminated the contractual relationship with it.
On August 2, 1995, appellant filed a first amended complaint in which it properly identified DePizzo, which previously had been identified as "John Doe Corporation" in the initial complaint. Appellee responded in its answer by denying all responsibility for the termination of the contract between appellant and DePizzo. Subsequently on September 5, 1996, appellee filed a motion for leave to file a motion for summary judgment which was granted by the trial court. Additionally, on September 26, 1996, appellant filed a second amended complaint upon leave of court which included a cause of action sounding in tortious interference with a business relationship.
Appellee filed its motion for summary judgment on September 30, 1996, at which time it argued that appellant could not establish all the necessary elements to prove a tortious interference with a contractual relationship. Appellant filed its motion in opposition to summary judgment on October 8, 1996. The initial motion for summary judgment was supplemented on October 25, 1996, at which time appellee filed a reply brief which addressed appellant's claim of tortious interference with a business relationship. Having reviewed the briefs on the matter, the trial court granted appellee's motion for summary judgment on December 5, 1996. A timely notice of appeal was filed on January 2, 1997.
Appellant raises two assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY SUSTAINING DEFENDANT-APPELLEE'S SUMMARY JUDGMENT MOTION AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER SOCIETY TORTIOUSLY INTERFERED WITH THE CONTRACT BETWEEN REALI AND DEPIZZO AND JUDGMENT SHOULD NOT HAVE BEEN GRANTED AS A MATTER OF LAW."
In appellant's first assignment of error, it is argued that an implied contract existed between appellant and DePizzo as a result of past business relations between the two parties. Appellant contends that its firm was the only C.P.A. firm utilized by DePizzo over the past several years. With the exception of certain functions which were performed in-house, appellant alleges that all accounting services were provided by its firm. Absent appellee's insistence that DePizzo utilize a firm recommended by it for the preparation of annual financial statements, appellant alleges that the prior business arrangement between it and DePizzo would have continued. Furthermore, appellant alleges that the remaining four elements had been established to sustain a claim for tortious interference with a contract. Additionally, genuine issues of material fact were believed to exist regarding whether appellee's actions rose to such a level as to permit a recovery.
The crux of appellee's response to appellant's allegations under the first assignment of error is that no contract actually existed with DePizzo which would give rise to a tortious interference with a contract action. While appellant had prepared financial statements for DePizzo in the past, such functions were based upon annual express contracts to prepare the prior year's documentation. In that all such contracts had been fully performed at the time DePizzo ceased using appellant's services, appellee argues that tortious interference cannot be established. Appellee argues that merely because the parties had done business in the past in no way binds DePizzo to utilize appellant's services ad infinitum. Absent the existence of any contract, express, implied or otherwise, appellee believes appellant's first cause of action must fail.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56 (C) controls and provides that before such a motion may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Stateex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. In that a grant of summary judgment disposes of a case based on a matter of law, this court's analysis on appeal is conducted under a de novo standard of review.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
 B. APPLICABLE LAW
The Ohio Supreme Court first formally recognized a cause of action for tortious interference with a contract in Kentyv. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415. In this decision, the Court set forth the elements of such a cause of action as follows: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. Id. at 419. The initial hurdle which must be overcome in order to successfully establish a tortious interference with a contract cause of action is the existence of a contract.
While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract. Lucas v.Costantini (1983), 13 Ohio App.3d 367, 368-69. In an express contract, the assent to the contracts terms is formally expressed in the offer and acceptance of the parties. Legros v.Tarr (1989), 44 Ohio St.3d 1, 6. However, in an implied contract no such formal offer and acceptance occurs and no express agreement exists. In contrast, the meeting of the minds must be established by demonstrating that the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists "as a matter of tacit understanding."State ex rel. Mallory v. Public Emp. Retirement Bd.
(1998), 82 Ohio St.3d 235, 249, citing Legros,supra at 7. The conduct and declarations of the party must be examined to determine the existence of an intent to be bound. Columbus Hocking Valley Toledo Ry. Co. v.Gaffney (1901), 65 Ohio St. 104, 116-17. Furthermore, the existence of a contract is generally determined by a court as a matter of law. Doe v. Adkins (1996), 110 Ohio App.3d 427,436, citing Latina v. Woodpath Dev. Co. (1991),57 Ohio St.3d 212.
 C. ANALYSIS
A review of the record indicates that not only was there an absence of an express contract which bound the parties to ongoing business relations but there also was insufficient support to illustrate the existence of an implied contract. The business dealings between appellant and DePizzo had consistently been governed by annual "engagement letters" which outlined the services to be performed by appellant in any given year. The record reflects that the last such agreement entered into between the parties was dated in January of 1994. This agreement was entered into approximately seven months before DePizzo switched accounting firms. Under this final agreement, appellant agreed to review relevant balance sheets but made it abundantly clear that no audits of the financial statements would be made. Additionally, the January 1994 engagement letter which was drafted by appellant specifically reads in relevant part:
 "The engagement does not include services not specifically stated in this letter. Additional services which you may request will be subject to separate arrangements."
This arrangement was attested to by Earl Scott, one of the partners in appellant's group. Mr. Scott testified during deposition as follows:
 "Q. Was there any written contract that went back to 1986 that specified what services you would provide on an ongoing basis?
A. No." (Scott Depo. at 27).
 Q. This is dated January 19, 1994. It's for preparing the financial statement for 1993?
A. Correct.
 Q. That is the only understanding that you had with him about what services would be provided to the DePizzo organization?
A. Correct.
 Q. In fact, for every year going back, there was a letter like this?
* * *
 A. For every year we would do a review, we would have a letter." (Scott Depo. at 29-30)
Pursuant to Kenty, it must first be shown that a contract exists in order to proceed on a claim for tortious interference with a contract. The above excerpts make it clear that no express contract was breached. Appellant and DePizzo entered into annual contractual agreements through the use of "engagement letters." These agreements specifically outlined all services which were to be performed by appellant for DePizzo for the prior fiscal year. At the time DePizzo ceased using appellant's services, all obligations had been fulfilled as related to any "engagement letters" which had previously been agreed upon by the parties. As such, no express contract existed which bound the parties.
Similarly, the record in the case sub judice does not support a conclusion that an implied contract existed between the parties. As discussed in Mallory, supra, the circumstances surrounding a transaction must make it reasonably certain that a contract exists "as a matter of tacit understanding" for an implied contract to be construed as being in existence between the parties. In contrast, the circumstances surrounding the parties' transactions in the case at bar make it reasonably certain that a contract did not exist. The record reveals that the parties entered into express contracts for the performance of financial services on a yearly basis. These contracts only covered services to be performed as related to the prior fiscal year. The services which were to be performed by appellant admittedly varied from year to year depending on those services which could be performed in-house by DePizzo. Further limitations on the agreement between the parties was provided by the language utilized by appellant in drafting the January 1994 "engagement letter". Appellant specifically stated that additional services which may be requested would be subject to separate agreements between the parties.
These circumstances make it clear that the parties did not have a tacit understanding that they were bound to do business beyond the final "engagement letter". Merely because DePizzo had done business with appellant for a number of years prior to the filing of the instant complaint does not lead to the conclusion that DePizzo must retain appellant's services indefinitely. The past business dealings between the parties made it evident that services were provided on a yearly basis as provided by annual "engagement letters". The nature of these services varied based upon DePizzo's need. Additionally, the "engagement letter" drafted by appellant made it clear that any services beyond those specified would only be performed if a separate agreement was reached. It cannot be held that these circumstances were sufficient to create an implied contract as related to ongoing business dealings.
In the absence of any contract between the parties this court must hold that appellant's first assignment of error lacks merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY SUSTAINING DEFENDANT-APPELLEE'S SUMMARY JUDGMENT MOTION AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER SOCIETY TORTIOUSLY INTERFERED WITH THE BUSINESS RELATIONSHIP BETWEEN REALI AND DEPIZZO AND JUDGMENT SHOULD NOT HAVE BEEN GRANTED AS A MATTER OF LAW."
Appellant next argues that the trial court erred when it granted summary judgment as to the tortious interference with a business relationship cause of action. Appellant contends that it had an established business relationship with DePizzo which appellee caused to be terminated. Additionally, appellant argues that appellee could not establish a privilege which would excuse the interference with the business relationship. Appellant bases this assertion on the following propositions: (1) appellee failed to determine whether appellant could provide acceptable accounting services; (2) appellant had a decade long business and personal relationship with DePizzo prior to the lawsuit; (3) no evidence was presented before the trial court which would lend credence to appellee's asserted interest in assuring DePizzo's creditworthiness; and (4) there was an important societal interest in allowing businesses to freely choose competent professionals to assist them in their financial matters.
 A. APPLICABLE LAW
The tort of interference with business relationships occurs when an individual, without privilege to do so, "induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." A B-AbellElevator Co. v. Columbus/Cent. Ohio Bldg. Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 14. In determining whether or not a privilege exists, this court previously adopted the view expressed in Juhasz v. Quik Shops. Inc. (1977),55 Ohio App.2d 51. In Allied Erecting and Dismantling Co. Inc.v. Uneco Realty Co. (1996), 116 Ohio App.3d 410 this court held that in determining whether a privilege exists, the following must be examined:
 "(a) the nature of the actor's conduct, (b) the nature of the expectancy with which his conduct interferes, (c) the relations between the parties, (d) the interest sought to be advanced by the actor, and (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand." Id. at 415.
Moreover, it has been held that an individual is privileged to purposely cause another not to continue a business relation "by in good faith asserting * * * to protect properly a legally protected interest of his own which he believes may otherwise be impaired * * * by the performance of the * * * transaction."Juhasz, supra at 57.
 B. ANALYSIS
Appellant's second assignment of error fails for a number of reasons. First, appellant is unable to show any interference with a business relationship as there was no business relationship between the parties which could be viewed as ongoing in nature. As discussed under appellant's first assignment of error appellant and DePizzo conducted business as provided in annual "engagement letters". At the time in which DePizzo changed accounting firms, all services had been completed under the agreements between the parties. As such, any business relationship between the parties ceased. Merely because the parties had done business on an annual basis in the past under express agreements did not mean that any business relationship continued indefinitely into the future. In the absence of an ongoing business relationship, it could not be shown that appellee purposely caused DePizzo "not to enter into or continue a business relation." A B-Abell Elevator Co.,supra.
Even if a relationship did exist between the parties at the time DePizzo discontinued using appellant's services, the record is devoid of any evidence that appellee would not have considered appellant's firm as acceptable if submitted by DePizzo. Additionally, there is no evidence of record which would indicate that appellee required DePizzo to retain a suggested firm rather than appellant's firm. Appellee directed a letter to DePizzo's Chief Financial Officer ("C.F.O.") which stated in pertiment part:
 "As we discussed today, the bank is willing to accept reviewed statements to fulfill the reporting requirements under our various loan agreements for the facilities extended to you and your nursing facility companies, provided they are prepared by a CPA firm acceptable to the bank." (Emphasis added.)
Furthermore, the C.F.O. for DePizzo provided deposition testimony which indicated that appellee did not require a change in C.P.A. firms:
 "A. He didn't come out and say `You must or you will not get the loan.'" (Ifft Depo. at 36)
Finally, appellee's representative testified at deposition as follows regarding the use of appellant's firm for accounting services:
 "Q. Isn't a it a fact that you made it perfectly clear to Mr. DePizzo or Mrs. Ifft [C.F.O.] that the loan would not be granted if they continued to use the Reali firm?
 A. Oh, absolutely not. That's not a fact." (Fehn Depo. at 16)
This testimony indicates that DePizzo switched accounting firms of its own free will and not as a result of any actions by appellee. Nothing prevented DePizzo from submitting appellant's credentials to appellee in order to continue using their accounting services. Appellee cannot be held to have a duty to examine appellant's credentials when such were never submitted to it. As such, appellant would be unable to support any claim of tortious interference with a business relationship action.
A final ground for holding that appellant's second assignment of error is without merit is that appellee successfully established that it had a privilege as related to any business relations with DePizzo. As this court discussed in AlliedErecting and Dismantling Co. Inc., supra, an individual may establish the existence of a privilege which would protect against a tortious interference with a business relationship action. Appellee has demonstrated that if in fact any business relationship existed between DePizzo and appellant, which this court has previously opined did not exist, that it was privileged to interfere as it was protecting its own business interest. See Juhasz, supra.
Appellee was dealing directly with DePizzo in order to finalize a substantial loan/line of credit. In assuring that DePizzo was in a sound financial position and continued in such a position, appellee was justified in requiring the preparation of certain documentation. Moreover, appellee was free to require the use of an accounting firm which it was familiar with and had confidence in prior to approving the funds for DePizzo. Appellee's interest in these matters far outweighed any expectancy which appellant had in continued business relations with DePizzo. As previously discussed in detail, appellant realistically had no expectancy of ongoing business relations with DePizzo as all express contracts, which took the form of "engagement letters" had been fulfilled. Therefore, appellee's privilege negated any claim which could be brought by appellant for tortious interference with a business relationship between it and DePizzo. Appellant's second assignment of error lacks merit.
For the foregoing reasons, the decision of the trial court is affirmed.
Cox, P.J., dissents; see dissenting opinion.
Waite, J., concurs.
 APPROVED: _________________________ JOSEPH J. VUKOVICH, JUDGE