**REICHMAN, Plaintiff-Appellant, v. DRAKE, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 7415.   Decided May 7, 1951.

594

Cors, Scherer, Hair & Hartsock, Cincinnati, for plaintiff-appellant.

Milton D. Tobin, for defendant-appellee.

**OPINION**

By MATTHEWS, J.:

On September 10th, 1935, the defendant's husband took possession of premises known as 410 Walnut Street in the City of Cincinnati as a lessee of The Thomas J. Emery Memorial Estate. He continued as such lessee until his death in 1938. Thereupon, the defendant became lessee of the premises. In 1944, the parties entered into a new lease for a term of five years commencing on June 10th, 1944, and expiring on June 9th, 1949. On June 11th, 1948, The Thomas J. Emery Memorial Estate, the lessor, notified the defendant, the lessee, in writing, that the lease would not be renewed at its expiration. The lessee requested the lessor to renew the lease, and, as a result of such request, the lessor, on September 14th, 1948, again notified her that the lease "would not be renewed at its expiration date, viz., June 9th, 1949." Although defendant during the time from September 14th, 1948 to June 9th, 1949 tried to get the lessor to recede from its position not to renew the lease, there is no claim or evidence that the lessor did so or gave the defendant any basis for thinking that it would or might do so. Nor did the plaintiff give defendant any right to expect that she would be permitted to hold over.

In the meantime, The Thomas J. Emery Memorial Estate, the lessor, on February 4th, 1949, leased or contracted to lease these premises to the plaintiff for a term of five years, commencing on the 1st day of July, 1949, and expiring on June 30th, 1954. This lease or agreement contained a provision that possession would be given when the defendant vacated the premises. The defendant was informed of this lease or agreement to lease within a day or so of its execution.

The defendant did not vacate the premises on June 9th, 1949, and The Thomas J. Emery Memorial Estate instituted proceedings in forcible entry and detainer against her. The defendant did not vacate the premises until on or about November 1st, 1949.

This action was filed on July 14th, 1949, while defendant was still in possession of the premises, to recover the damages sustained by reason of the defendant's refusal to vacate the premises and permit him to take possession on July 1st, 1949.

At the trial, on the conclusion of the plaintiff's evidence, the defendant moved for an instructed verdict. This motion was granted. On the verdict thus returned, judgment was entered. It is from that judgment that this appeal was taken.

The first question presented is whether the facts set forth present a case for submission to the jury to assess such damages as the law permits for the failure and refusal of the defendant to vacate the premises on the expiration of her lease. In other words, did her failure to vacate violate any right of the plaintiff?

Now what right had the plaintiff? It is undisputed that he and The Thomas J. Emery Memorial Estate had executed a written document in the form of a lease giving to the plaintiff a leasehold for five years from July 1st, 1949, containing a provision that possession was to be given when the premises were vacated by the existing tenant. In 32 Am. Jur., 51, it is stated that: "The fact that the term of the lease is to commence in futuro does not prevent the agreement from being a present demise."

And at page 78 of 32 Am. Jur., the universally recognized rule is stated that: "A leasehold estate, however, such as a term for years may be created at common law to commence in futuro, for in such a case a present interest vests, called an 'interesse termini,' although not an interest in possession until the lessee enters into possession."

Johnston v. Corson Gold Mining Co., 15 L. R. A. (n. s.) 1079, (157 Fed. 145), involved a lease similar in many respects to the terms of the lease in the case at bar. It was held as stated in the first paragraph of the syllabus that: "A provision in a lease that, if the lessor cannot deliver possession as contemplated, delay in delivery of possession will not work an abridgement of the term, but shall operate to defer the date of its commencement, does not change the character of the conveyance from an executed to an executory contract." And at page 1083, the Court said: "A lease to commence in futuro is grantable. Whitney v. Allaire, 1 N. Y. 3055; Becar v. Flues, 64 N. Y. 518. The lessee acquired an interest in the term which he could assign, and from which he could maintain ejectment without any further act on his part, if possession was withheld after his right of entry became completed." See, also, 32 Am. Jur., 50, et seq.

The court held that as the plaintiff had an adequate remedy

at law by ejectment, an action in equity to remove cloud, etc., could not be maintained against one in possession of the leasehold.

In November or December, 1949, a new lease was entered into between the plaintiff and The Thomas J. Emery Memorial Estate, providing for the commencement of the term at the time when the plaintiff obtained possession of the premises. Both copies of the lease or agreement of February 4th, 1949, were destroyed, and, for that reason, the parties to this action were forced to rely on oral testimony as to its terms. However, the parties were in agreement as to its essential terms, and we conclude that it was a lease transferring to the plaintiff a leasehold estate in the premises as distinguished from a contract for a lease, creating contractual rights, but conveying no estate in the land.

As will appear later, we do not consider the distinction between a lease and an agreement for a lease as material in this case. In either event, the plaintiff would have rights created thereby, which could not be violated with impunity. We think the authorities warrant the statement that even assuming that no lease or agreement for a lease had been consummated, and that the parties had not concluded their negotiations, a third person could not maliciously interfere and prevent the negotiations resulting in a contract without incurring liability. And the fact that the parties substituted a new lease for the old one would have no effect upon a cause of action already accrued.

We next inquire whether the action of the defendant constituted an infringement of the plaintiff's rights, for which the law affords a remedy. Of course, no contract existed between the plaintiff and defendant, and, therefore, no action ex contractu could exist. But plaintiff had rights, tangible or intangible—property rights—recognized by law  Did defendant's conduct constitute an infringement of those rights? If so, his conduct was a wrong creating a cause of action ex delicto.

In 4 Restatement of the Law of Torts, Section 766, the law is summarized as follows:—

"Except as stated in Section 698, one who, without privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

Section 698 referred to in this rule relates to contracts and other relations looking forward to marriage, and is irrelevant to this situation.

That the defendant did interfere in the relation between the plaintiff and The Thomas J. Emery Memorial Estate is clear from the evidence and her continued wrongful possession of the premises made her interference effective. She made it impossible for the lessor to place the lessee in possession on July 1st, the commencement date of the term, as contemplated by the parties thereto.

The rule deduced from the decided cases on the subject of prevention of performance of a contract is stated in 30 Am. Jur., 71 and 72, as follows:

"The weight of authority supports the rule that an action will lie against a person who, otherwise than in the legitimate exercise of his own rights, procures a breach of any contract, even though it is not a contract of employment. The theory of this doctrine is that the right to perform a contract and to reap the profits resulting from such performance, and also the right to performance by the other party, are property rights which entitle each party to protection, and to seek compensation by action in tort for any injuries to such contract."

And, at page 83, the rule applicable to rights arising against one who prevents entering into a contract is stated to be:

"The act of maliciously inducing a person not to enter into a contract with another, which he would otherwise have entered into, is actionable if damages result, according to a view which may now be said to prevail. A cause of action will usually be recognized where a party would receive a contract except for the malicious, fraudulent and deceitful acts of a third person, the right to make contracts without interference being one which the courts will protect."

See, **Leibovitz v. Central Nat'l Bank, 75 Oh Ap, 25.**

The defendant testified that she had no ill-will, spite, or malice toward the plaintiff and the plaintiff conceded that the defendant was not actuated by ill-will toward him. On this factual basis it is urged upon the court that malice is an essential element of a cause of action in this category, and that the record shows the absence of this essential element. That contention presents the question of what is meant by the term "malice" in this connection. This subject is discussed in 30 Am. Jur., 75 and 76, where it is stated that:—

"Malice, in some form, is generally implied from the act of interference with contract relations, and is declared to be an essential ingredient in such cases. The lack of scientifically accurate terminology, however, has militated against clearness upon this point, both in conception and discussion. Thus, the word 'malice' which, in its technical legal sense, is

the intentional doing of a harmful act without legal justification or excuse, or, in other words, the wilful violation of a known right, is sometimes used in the sense of ill will, or even as denoting a desire to harm irrespective of the presence or absence of ill will. The malice, however, which makes one liable for procuring a breach of contract is malice in its legal sense, and whether a wrongdoer's motive in interfering is to benefit himself or to gratify his spite by working mischief to another is immaterial; malice in the sense of ill will or spite is not essential. In other words, many courts hold that 'malice' or 'ill will,' as those words are commonly understood, is not necessary in order to sustain an action for inducing a breach of contract, but that 'malice,' in this connection, denotes unjustified interference with the contractual relationship. It is not necessary to prove actual malice against a defendant in order to establish a cause of action against him for knowingly procuring the breach of a third person's contract with the plaintiff."

It will be seen that personal ill-will, spite, or hatred is not an essential element in this cause of action. In this, as in most actions in tort, it might become important in the event it was sought to recover punitive damages. Its significance, however, is limited to its effect on the amount of the recovery.

We conclude that the plaintiff proved that the defendant's conduct violated his property rights, leaving only the question of whether there is any evidence of damage. We examine the record to determine that question. Before doing so, we should determine the rule or measure of damages in this sort of a case. As already noted, the defendant, with full knowledge of the facts and without even a prima facie claim of right, prevented the lessor from delivering possession of the leased premises to the plaintiff, notwithstanding her knowledge that the plaintiff was preparing to take possession and was relying upon her to vacate the premises. Under such circumstances it would appear that the defendant could not be viewed by the law in any more favorable situation than the lessor would be if it had arbitrarily refused to deliver possession to the lessee. A lessor in that situation would be required to pay at least nominal damages and such actual damages as was in the reasonable contemplation of the parties as a consequence of the breach. In 32 Am. Jur., 54, it is said:

"While there is authority to the effect that only nominal damages can be recovered for a breach of the proposed lease by the proposed lessor of his agreement to give a lease, provided the proposed lessor acts in good faith in entering the

agreement, according to the great weight of authority in the United States, the proposed lessee is entitled to recover as general damages the actual value of his bargain as shown by the excess, if any, of the actual rental value of the premises over the agreed rent. This, however, is not necessarily the extent of his right of recovery; under special circumstances warranting it, damages may also be recovered for losses that are the natural, direct, and necessary consequences of the breach where they are capable of being estimated by reliable data, and are such as should reasonably have been contemplated by the parties. Thus, where there was a wilful refusal on the part of the proposed lessor to give possession, special damages consisting of expenses incurred by the lessee in preparing to remove to and occupy the premises have been held recoverable."

In **Herron Co. v. Jones, 28 Oh Ap, 190,** at 196, it is said:

"The measure of damages appears settled by practically all the authorities to be 'the difference between the rent agreed upon and the market value of the term, plus any special damages alleged and proved.' "

In 15 Am. Jur., 545, it is stated that:

"As a general rule the reasonable and necessary expenses incurred in good faith, in anticipation of performance, or in part performance, of a contract, may be recovered as a part of the damages for its breach, especially where the breach consists in preventing performance."

As this case must be reversed and remanded for a new trial, we do not deem it necessary or helpful to determine what particular items of damage are recoverable. That will depend on what items are shown to have been within the contemplation of the parties and to have been the natural result of the defendant's wrongful acts. It is clear from the record that the plaintiff suffered some actual damage within this rule.

For these reasons, we are of the opinion that the court erred in sustaining the defendant's motion for an instructed verdict, and in overruling the plaintiff's motion for a new trial.

The judgment is reversed and the cause remanded for a new trial.

HILDEBRANT, PJ, MATTHEWS, J, concur in syllabus, opinion & judgment.

ROSS, J, not participating.