ALLIED ERECTING AND DISMANTLING COMPANY, INC., Appellee,

v.

UNECO REALTY COMPANY et al., Appellants;
The Ruhlin Company et al., Appellees.

[Cite as *Allied Erecting & Dismantling Co. v. Uneco
Realty Co.* (1996), 116 Ohio App.3d 410.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 170.

Decided Dec. 4, 1996.

*Christopher R. Opalinski* and *Terry H. Han*, for appellee.

*Charles E. Dunlap* and *Joseph P. Sontich, Sr.*, for appellants.

*Michael R. Stith*, for appellee The Ruhlin Co.

———

GENE DONOFRIO, Judge.

Defendants-appellants, Uneco Realty Company and United Excavating Company, appeal from an order of the Mahoning County Common Pleas Court sustaining the motions of plaintiff-appellee, Allied Erecting and Dismantling Company, Inc., and defendant-appellee, The Ruhlin Company, for partial summary judgment and summary judgment, respectively, regarding appellants' counterclaim and cross-claim for tortious interference.

The record indicates that the Ohio Department of Transportation ("ODOT") awarded appellee Ruhlin the primary contract for the South Avenue bridge project. Per ODOT contract requirements, Ruhlin obtained a $6,500,000 surety bond from St. Paul Mercury Insurance Company. Ruhlin subsequently entered into independent subcontracts with appellants Uneco and United. Though appellants are separate companies, Ted Soroka is president of both, and both are represented by the same counsel in this matter. Uneco contracted to supply dirt for the bridge project, while United contracted for certain demolition and dirt compaction. On March 5, 1991, Uneco entered into an exclusive supply contract with appellee Allied for the purchase of approximately 76,000 cubic yards of dirt at $1.25 per cubic yard. The Allied–Uneco contract provided that Allied would load the dirt from its site onto trucks furnished by Uneco for transport to the South Avenue bridge project site.

After the delivery of approximately 11,000 cubic yards of dirt, an authorized random sampling of Allied's supply site revealed that the dirt contained trace amounts of asbestos and did not meet the specifications required by the ODOT contract. The record contains a stream of letters exchanged between Allied and Uneco addressing additional expenses Allied alleged it incurred due to Uneco's delay in removing the dirt, the necessity for Allied to be compensated for these expenses, and other related terms of their contract. On October 29, 1991, Allied notified Uneco that due to the additional site work performed by it at the request of Uneco and the resulting delay of the removal sequence, the unit price of the dirt would be increased to $3.25 per cubic yard, effective December 31, 1991.

In a letter dated December 1, 1991, Uneco acknowledged Allied's October 29, 1991 letter, stating that it was aware of the delay-related expenses and that it "anticipate[d] that ODOT and the general contractor [Ruhlin would] undoubtedly grant a percentage raise relative to our contract." This letter also noted that due to the delays, Uneco would now have to use approximately 22,500 cubic yards of sand and gravel, instead of dirt, for the project. Since Allied did not have a

source of supply for sand and gravel, this amount was to be obtained from another source and would correspondingly decrease the amount of dirt Uneco would need to purchase from Allied.

In subsequent correspondence, Uneco advised Allied that it was not in a position to request additional compensation for ODOT, since it did not have a contract with ODOT, but that it would pursue the matter through Ruhlin.

On June 12, 1992, at the request of Uneco and United, Allied provided appellee Ruhlin with a letter of assurance, stating that as a gesture of good faith, it would continue to provide the dirt as contracted, while reserving the right to seek additional compensation for the additional work performed to meet the ODOT asbestos-content requirements at an appropriate time. Allied also notified appellants that since it was not privy to the contracts between appellee and appellants and did not fully understand the necessity of this letter or the status of those contracts, it had invited Ruhlin to respond if Ruhlin had any further questions or wished to discuss the matter in further detail.

On June 18, 1992, appellants' counsel wrote a letter to Allied demanding that it clarify to Ruhlin its reservation for further compensation, insisting that Allied assure Ruhlin that any reservation Allied maintained was against appellants, and not against Ruhlin, since no contract existed between Allied and Ruhlin.

Ruhlin terminated its contracts with appellants in May 1992, asserting as the primary reasons appellants' failure to satisfactorily assure Ruhlin of their ability to supply dirt as contractually required, and their refusal to obtain an additional surety bond. Ruhlin informed appellants that its decision was based on information of appellants' unstable financial position and alleged labor difficulties.

Appellants subsequently denied that they were financially unstable or had unmanageable labor difficulties. They further emphasized that these matters, specifically the contract with Allied, in no way affected their ability to perform their contractual duties with Ruhlin.

Allied filed a breach of contract complaint on September 22, 1992, naming United, Uneco, Ruhlin, and St. Paul as defendants. United and Uneco filed separate and joint counterclaims against Allied, as well as separate and joint cross-claims against Ruhlin and St. Paul in amended separate answers filed December 29, 1992. Allied filed a motion for partial summary judgment regarding appellants' counterclaims on June 6, 1994. Ruhlin filed a motion for summary judgment to dismiss the cross-claims filed by appellants on July 6, 1994. Appellants filed second amended separate answers, counterclaims and cross-claims on July 22, 1994. On August 31, 1994, the Mahoning County Common Pleas Court granted partial summary judgment to Allied on appellants' counterclaims alleging tortious interference and to Ruhlin on appellants' cross-claims alleging tortious

interference. St. Paul's motion to dismiss appellants' cross-claims was also sustained. Appellants filed this timely appeal September 29, 1994.

The standard for granting a summary judgment motion under Civ.R. 56(C) was stated in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274:

"[B]efore summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

A reviewing court, upon appeal from a summary judgment, should look at the record in the light most favorable to the party opposing the motion. *Engel v. Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932. In reviewing a trial court's grant of summary judgment, an appellate court applies the same standard as used by the trial court. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 632 N.E.2d 1341, headnote four. The plain language of Civ.R. 56(C) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

Appellants present two assignments of error in this appeal. The first assignment of error alleges:

"The lower court committed prejudicial error in sustaining appellee-Allied Erecting and Dismantling Company's motion for summary judgment relative to tortious interference with contract, and in stating that the appellants/counter-claimants United Excavating Co., Inc. and Uneco Realty Company did not produce evidence tending to show Allied's conduct to be tortious and legally [un]justified, thereby also sustaining the claim for punitive damages. However, whereas in this cause sufficient material factual evidence was produced by appellants, the lower court should not have considered the weight of the evidence, or assess credibility, and should have resolved all conflicts of evidence most strongly in favor of the appellants."

The issue in appellants' first assignment is whether the trial court, in determining whether appellants presented sufficient evidence to create a genuine issue of material fact whether Allied's conduct was tortious and without legal justification, improperly weighed and assessed the credibility of the evidence.

Appellants contend that, based on their second amended answers and the evidence presented, sufficient questions of material fact existed so as to defeat a summary judgment motion. Appellants support their argument by emphasizing Allied's October 29, 1991 letter to Uneco demanding an increased unit price and Allied's December 9, 1991 letter, sent to Uneco and Ruhlin, allegedly confirming this increase. Appellants assert that these letters and other communications with Ruhlin encouraged Ruhlin to terminate its contracts with appellants. Appellants argue that since Allied did not have a contract with Ruhlin, or with ODOT, these communications were done without legal justification and therefore constituted tortious interference.

Appellants cite *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235, in asserting that since Allied was not a party to the Ruhlin–Uneco/United contracts, it was not legally justified in interfering with those contracts. Appellants assert that Allied's interference was the intentional doing of a harmful act without legal justification or excuse, and thus constituted "legal malice" sufficient to support a claim of tortious interference. *Juhasz, supra.*

Allied asserts that appellants' counterclaim is nothing more than a routine breach of contract claim. Allied further asserts that appellants have provided no evidence that Allied's conduct was wrongful or tortious.

In *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 629 N.E.2d 28, the court set forth the elements that must be proven to sustain a claim of tortious interference: (1) the actual existence of a contract or negotiations with regard to a contract; (2) defendant's knowledge of the contract or negotiations; (3) the defendant's interference in the contract or negotiations; (4) the defendant's conduct was malicious and without legal justification; and (5) damages.

██ A party is privileged to purposely cause another not to perform a contract with a third person by in good faith asserting or threatening to protect a legally protected interest of his own that he believes may otherwise be impaired or destroyed by the performance of the contract. *Juhasz, supra.* In determining whether a privilege exists, courts will examine (a) the nature of the actor's conduct, (b) the nature of the expectancy with which his conduct interferes, (c) the relations between the parties, (d) the interest sought to be advanced by the actor, and (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand. *Juhasz, supra.*

Allied's exclusive supply contract with Uneco made no reference to the quality of the dirt to be supplied, whereas the record indicates that Uneco was aware of ODOT quality standards via its purchase order confirmation from Ruhlin. Al-

lied's initial communication with Ruhlin was at appellants' request, and inferences made by Ruhlin as a result of these communications were beyond Allied's control.

Though appellants presented sufficient evidence to provide a genuine issue of material fact regarding the first three elements of tortious interference, as well as damages, there is nothing in the record to indicate that the nature of Allied's conduct or the balancing of expectancy interests was malicious or unjustified. There is no evidence in the record indicating that Allied's communications with any of the related parties were initiated for reasons other than to protect contractual interests. Allied was completely justified in communicating with Ruhlin for the purpose of protecting its legally protected rights and interests, and in making all parties aware of its intention to file suit to secure the additional compensation earned by the additional work performed in good faith and at the request of appellants.

Appellants' sole argument that Allied's conduct was without justification or excuse is not in line with the holding of *Juhasz*, that a party to or interested in a contract may in good faith interfere with the execution of the contract where there is a bona fide doubt as to his rights under it. Appellants also failed to provide any evidence showing malice, a required element of tortious interference, defined as unjustified interference with the contractual relationship. *Reichman v. Drake* (1951), 89 Ohio App. 222, 45 O.O. 444, 100 N.E.2d 533. In weighing Allied's freedom of action against the expectancy interests with which its conduct interfered, it is clear that appellants' have provided merely conclusory allegations unsupported by the evidence.

In reviewing the evidence in a light most favorable to the nonmoving party, it is clear that it was not necessary for the trial court to weigh the evidence or assess its credibility in properly sustaining Allied's motion for summary judgment.

Appellants' first assignment is without merit.

■ Appellants' second assignment of error asserts:

"The lower court committed prejudicial error in sustaining the motion of appellee Ruhlin for summary judgment, relative to the appellants Uneco and United's claims for tortious interference with contracts as respects the appellee Ruhlin, and this finding should be reversed."

The issue to be determined in appellants' second assignment of error is whether appellants presented sufficient evidence to create a genuine issue of material fact such that reasonable minds could reach a conclusion that Ruhlin's communication with Allied, absent a contractual relationship between them, constituted tortious interference. Appellants' reasoning is based on the same legal arguments used in their first assignment of error.

The record indicates that Ruhlin communicated to appellants its concern regarding appellants' ability to perform its contractual duties due to purported financial and labor difficulties. Ruhlin notified appellants that the contracts were terminated due to appellants' failure to secure additional bonding and to sufficiently assure Ruhlin of their ability to perform. Ruhlin's contracts with appellants were terminated one month before Allied terminated its contract with appellants. No evidence was presented to contradict Ruhlin's assertion that neither Allied nor Ruhlin was aware of the other's contractual status with appellants.

A mere breach of contract claim, such as appellants' cross-claims, may not be altered into a tortious interference claim by simply adding that the breach was wilful, wanton, or malicious. *Ketcham v. Miller* (1922), 104 Ohio St. 372, 136 N.E. 145. Though appellants' assignment of error is unclear, this court presumes it is directed to the Uneco–Allied contract. The record reveals no evidence indicating that Ruhlin initiated any communications with Allied. The evidence clearly indicates that Ruhlin's decision was based on multiple legitimate business factors. Whether Ruhlin's subjective belief as to Allied's ability to make a claim against appellants' surety bond was valid or not is immaterial to the present appeal, as it is clear that Ruhlin's primary concern was to protect its own contractual rights and interests encompassed in the ODOT bridge project contract.

Appellants have failed to provide any evidence indicating malicious or unjustified interference on the part of Ruhlin with regard to the Uneco–Allied contract. With no evidence to contradict the legitimate business concerns set forth by Ruhlin, appellants could not prove that Ruhlin's conduct was malicious or unjustified. Absent its ability to prove these material elements, appellants are precluded from prevailing on a claim of a tortious interference. A tort claim may not arise where the duty to fulfill the terms of the bargain arises only from the contract.

Appellants' second assignment of error is without merit.

The decision of the trial court is hereby affirmed.

*Judgment affirmed.*

JOSEPH E. O'NEILL, P.J., and COX, J., concur.