**REALI, GIAMPETRO & SCOTT, Appellant,**

v.

**SOCIETY NATIONAL BANK, Appellee.**

[Cite as *Reali, Giampetro & Scott v. Soc. Natl. Bank* (1999), 133 Ohio App.3d 844.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97CA2.

Decided June 25, 1999.

**846**

John A. McNally, for appellant.

Howard E. Coburn and Jay Blackstone, for appellee.

VUKOVICH, Judge.

The following appeal arises from the decision of the Mahoning County Court of Common Pleas granting summary judgment in that no genuine issue as to any material fact was felt to exist as related to allegations of tortious interference with a contract and tortious interference with a business relationship. For the reasons set forth below, the decision of the trial court is affirmed.

## I. FACTS

On July 7, 1995, appellant, Reali, Giampetro & Scott, a professional corporation, filed a complaint against Society National Bank, appellee, sounding in tortious interference with a contract. Appellant alleged that it had a longstanding business relationship with John A. DePizzo, Jr., Inc. ("DePizzo") which appellee intentionally, maliciously and with wanton disregard interfered with when it conditioned the grant of a $10,000,000 line of credit to DePizzo on the use of a C.P.A. firm recommended by appellee. Appellant argues that, fearing that the line of credit would not be granted, DePizzo terminated the contractual relationship with appellant.

On August 2, 1995, appellant filed a first amended complaint in which it properly identified DePizzo, which previously had been identified as "John Doe Corporation" in the initial complaint. Appellee responded in its answer by denying all responsibility for the termination of the contract between appellant and DePizzo. Subsequently on September 5, 1996, appellee filed a motion for leave to file a motion for summary judgment, which was granted by the trial court. Additionally, on September 26, 1996, appellant filed a second amended complaint upon leave of court, which included a cause of action sounding in tortious interference with a business relationship.

Appellee filed its motion for summary judgment on September 30, 1996, at which time it argued that appellant could not establish all the necessary elements to prove a tortious interference with a contractual relationship. Appellant filed its motion in opposition to summary judgment on October 8, 1996. The initial motion for summary judgment was supplemented on October 25, 1996, at which time appellee filed a reply brief which addressed appellant's claim of tortious interference with a business relationship. Having reviewed the briefs on the matter, the trial court granted appellee's motion for summary judgment on December 5, 1996. A timely notice of appeal was filed on January 2, 1997.

Appellant raises two assignments of error on appeal.

## II. ASSIGNMENT OF ERROR NUMBER ONE

Appellant's first assignment of error reads:

"The trial court erred, as a matter of law, by sustaining defendant–appellee's summary judgment motion as genuine issues of material fact exist as to whether Society tortiously interfered with the contract between Reali and DePizzo and judgment should not have been granted as a matter of law."

In appellant's first assignment of error, it is argued that an implied contract existed between appellant and DePizzo as a result of past business relations between the two parties. Appellant contends that its firm was the only C.P.A. firm utilized by DePizzo over the past several years. With the exception of certain functions that were performed in-house, appellant alleges that all accounting services were provided by its firm. Absent appellee's insistence that DePizzo utilize a firm recommended by it for the preparation of annual financial statements, appellant alleges that the prior business arrangement between it and DePizzo would have continued. Furthermore, appellant alleges that the remaining four elements had been established to sustain a claim for tortious interference with a contract. Additionally, genuine issues of material fact exist regarding whether appellee's actions rose to such a level as to permit a recovery.

The crux of appellee's response to appellant's allegations under the first assignment of error is that no contract actually existed with DePizzo that would give rise to claim for tortious interference with a contract. While appellant had prepared financial statements for DePizzo in the past, that function was based upon annual express contracts to prepare the prior year's documentation. In that all such contracts had been fully performed at the time DePizzo ceased using appellant's services, appellee argues that tortious interference cannot be established. Appellee argues that merely because the parties had done business in the past in no way binds DePizzo to utilize appellant's services *ad infinitum.* Absent the existence of any contract, express, implied or otherwise, appellee believes that appellant's first cause of action must fail.

## A. STANDARD OF REVIEW

In considering a motion for summary judgment, Civ.R. 56(C) controls and provides that before such a motion may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:

"[A] party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

■■ Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141. In that a grant of summary judgment disposes of a case based on a matter of law, this court's analysis on appeal is conducted under a *de novo* standard of review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245.

## B. APPLICABLE LAW

■ The Ohio Supreme Court first formally recognized a cause of action for tortious interference with a contract in *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863. In this decision, the court set forth the elements of the cause of action as follows: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Id.* at 419, 650 N.E.2d at 866–867. The initial hurdle which must be overcome in order to successfully establish a cause of action for tortious interference with a contract is the existence of a contract.

■ While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract. *Lucas v. Costantini* (1983), 13 Ohio App.3d 367, 368–369, 13 OBR 449, 449–452, 469 N.E.2d 927, 928–930. In an express contract, the assent to the contracts terms is formally expressed in the offer and acceptance of the parties. *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257, 262–263. However, in an implied contract no such formal offer and acceptance occur and no express

agreement exists. In contrast, the meeting of the minds must be established by demonstrating that the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists "as a matter of tacit understanding." *State ex rel. Mallory v. Public Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 249–250, 694 N.E.2d 1356, 1367, citing *Legros* at 7, 540 N.E.2d at 263–264. The conduct and declarations of the party must be examined to determine the existence of an intent to be bound. *Columbus Hocking Valley & Toledo Ry. Co. v. Gaffney* (1901), 65 Ohio St. 104, 116–117, 61 N.E. 152, 153–154. Furthermore, the existence of a contract is generally determined by a court as a matter of law. *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 436, 674 N.E.2d 731, 736–737, citing *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 567 N.E.2d 262.

## C. ANALYSIS

A review of the record indicates that not only was there an absence of an express contract that bound the parties to ongoing business relations but there also was insufficient support to illustrate the existence of an implied contract. The business dealings between appellant and DePizzo had consistently been governed by annual "engagement letters," which outlined the services to be performed by appellant in any given year. The record reflects that the last such agreement entered into between the parties was dated in January 1994. This agreement was entered into approximately seven months before DePizzo switched accounting firms. Under this final agreement, appellant agreed to review relevant balance sheets but made it abundantly clear that no audits of the financial statements would be made. Additionally, the January 1994 engagement letter, which was drafted by appellant, specifically reads:

"The engagement does not include services not specifically stated in this letter. Additional services which you may request will be subject to separate arrangements."

This arrangement was attested to by Earl Scott, one of the partners in appellant's group. Scott testified during deposition as follows:

"Q. Was there any written contract that went back to 1986 that specified what services you would provide on an ongoing basis?

"A. No.

"Q. This is dated January 19, 1994. It's for preparing the financial statement for 1993?

"A. Correct.

"Q. That is the only understanding that you had with him about what services would be provided to the DePizzo organization?

"A. Correct.

"Q. In fact, for every year going back, there was a letter like this?

"\* \* \*

"A. For every year we would do a review, we would have a letter."

Pursuant to *Kenty*, it must first be shown that a contract exists in order to proceed on a claim for tortious interference with a contract. The above excerpts make it clear that no express contract was breached. Appellant and DePizzo entered into annual contractual agreements through the use of "engagement letters." These agreements specifically outlined all services that were to be performed by appellant for DePizzo for the prior fiscal year. At the time DePizzo ceased using appellant's services, all obligations had been fulfilled as related to any engagement letters that had previously been agreed upon by the parties. Therefore, no express contract existed that bound the parties.

Similarly, the record in the case *sub judice* does not support a conclusion that an implied contract existed between the parties. As discussed in *Mallory, supra,* the circumstances surrounding a transaction must make it reasonably certain that a contract exists "as a matter of tacit understanding" for an implied contract to be construed as being in existence between the parties. *Id.,* 82 Ohio St.3d at 249–250, 694 N.E.2d at 1367. In contrast, the circumstances surrounding the parties' transactions in the case at bar make it reasonably certain that a contract did not exist. The record reveals that the parties entered into express contracts for the performance of financial services on a yearly basis. These contracts covered only services to be performed as related to the prior fiscal year. The services that were to be performed by appellant admittedly varied from year to year depending on those services that could be performed in-house by DePizzo. Further limitations on the agreement between the parties was provided by the language utilized by appellant in drafting the January 1994 engagement letter. Appellant specifically stated that additional services that might be requested would be subject to separate agreements between the parties.

These circumstances make it clear that the parties did not have a tacit understanding that they were bound to do business beyond the final engagement letter. Merely because DePizzo had done business with appellant for a number of years prior to the filing of the instant complaint does not lead to the conclusion that DePizzo must retain appellant's services indefinitely. The past business dealings between the parties made it evident that services were provided on a yearly basis as provided by annual engagement letters. The nature of these services varied based upon DePizzo's need. Additionally, the engagement letter drafted by appellant made it clear that any services beyond those specified would only be performed if a separate agreement was reached. It cannot be held that

these circumstances were sufficient to create an implied contract as related to ongoing business dealings.

In the absence of any contract between the parties this court must hold that appellant's first assignment of error lacks merit.

## III. ASSIGNMENT OF ERROR NUMBER TWO

Appellant's second assignment of error reads:

"The trial court erred, as a matter of law, by sustaining defendant–appellee's summary judgment motion as genuine issues of material fact exist as to whether Society tortiously interfered with the business relationship between Reali and DePizzo and judgment should not have been granted as a matter of law."

Appellant next argues that the trial court erred when it granted summary judgment as to the claim of tortious interference with a business relationship. Appellant contends that it had an established business relationship with DePizzo that appellee caused to be terminated. Additionally, appellant argues that appellee could not establish a privilege that would excuse the interference with the business relationship. Appellant bases this assertion on the following propositions: (1) appellee failed to determine whether appellant could provide acceptable accounting services, (2) appellant had a decade-long business and personal relationship with DePizzo prior to the lawsuit, (3) no evidence was presented before the trial court that would lend credence to appellee's asserted interest in assuring DePizzo's creditworthiness, and (4) there was an important societal interest in allowing businesses to freely choose competent professionals to assist them in their financial matters.

## A. APPLICABLE LAW

The tort of interference with business relationships occurs when an individual, without privilege to do so, "induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294. In determining whether a privilege exists, this court adopted the view expressed in *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235. In *Allied Erecting & Dismantling Co., Inc. v. Uneco Realty Co.* (1996), 116 Ohio App.3d 410, 688 N.E.2d 526 this court held that in determining whether a privilege exists, the following must be examined: "(a) the nature of the actor's conduct, (b) the nature of the expectancy with which his conduct interferes, (c) the relations between the parties, (d) the interest sought to be advanced by the actor, and (e) the social

interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand." *Id.* at 415, 688 N.E.2d at 529.

██ Moreover, it has been held that an individual is privileged to purposely cause another not to continue a business relation "by in good faith asserting * * * to protect properly a legally protected interest of his own which he believes may otherwise be impaired * * * by the performance of the * * * transaction." *Juhasz,* 55 Ohio App.2d at 57, 9 O.O.3d at 220, 379 N.E.2d at 239.

## B.  ANALYSIS

██ Appellant's second assignment of error fails for a number of reasons. First, appellant is unable to show any interference with a business relationship, as there was no business relationship between the parties that could be viewed as ongoing in nature.  As discussed under appellant's first assignment of error, appellant and DePizzo conducted business as provided in annual engagement letters.  When DePizzo changed accounting firms, all services had been completed under the agreements between the parties.  Therefore, any business relationship between the parties ceased.  Merely because the parties had done business on an annual basis in the past under express agreements did not mean that any business relationship continued indefinitely into the future.  In the absence of an ongoing business relationship, it could not be shown that appellee purposely caused DePizzo "not to enter into or continue a business relation."  *A & B–Abell Elevator Co.,* 73 Ohio St.3d at 14, 651 N.E.2d at 1294.

██ Even if a relationship did exist between the parties at the time DePizzo discontinued using appellant's services, the record is devoid of any evidence that appellee would not have considered appellant's firm as acceptable if submitted by DePizzo.  Additionally, there is no evidence of record to indicate that appellee required DePizzo to retain a suggested firm rather than appellant's firm. Appellee directed a letter to DePizzo's Chief Financial Officer ("C.F.O."), which stated in pertinent part:

"As we discussed today, the bank is willing to accept reviewed statements to fulfill the reporting requirements under our various loan agreements for the facilities extended to you and your nursing facility companies, *provided they are prepared by a CPA firm acceptable to the bank.*"  (Emphasis added.)

Furthermore, the C.F.O. for DePizzo provided deposition testimony indicating that appellee did not require a change in C.P.A. firms:

"A.  He didn't come out and say 'You must or you will not get the loan.' "

Finally, appellee's representative testified at deposition as follows regarding the use of appellant's firm for accounting services:

"Q. Isn't it a fact that you made it perfectly clear to Mr. DePizzo or Mrs. Ifft [C.F.O.] that the loan would not be granted if they continued to use the Reali firm?

"A. Oh, absolutely not. That's not a fact."

This testimony indicates that DePizzo switched accounting firms of its own free will and not as a result of any actions by appellee. Nothing prevented DePizzo from submitting appellant's credentials to appellee in order to continue using their accounting services. Appellee cannot be held to have a duty to examine appellant's credentials when they were never submitted to it. Therefore, appellant would be unable to support any claim of tortious interference with a business relationship.

█ A final ground for holding that appellant's second assignment of error is without merit is that appellee successfully established that it had a privilege as related to any business relations with DePizzo. As this court discussed in *Allied Erecting & Dismantling Co., Inc.,* 116 Ohio App.3d 410, 688 N.E.2d 526, an individual may establish the existence of a privilege which would protect against a tortious interference with a business relationship action. Appellee has demonstrated that if in fact any business relationship existed between DePizzo and appellant, which this court has held did not exist, it was privileged to interfere as it was protecting its own business interest. See *Juhasz, supra.*

Appellee was dealing directly with DePizzo in order to finalize a substantial loan/line of credit. In ensuring that DePizzo was in a sound financial position and continued in such a position, appellee was justified in requiring the preparation of certain documentation. Moreover, appellee was free to require the use of an accounting firm which it was familiar with and had confidence in prior to approving the funds for DePizzo. Appellee's interest in these matters far outweighed any expectancy that appellant had in continued business relations with DePizzo. As previously discussed in detail, appellant realistically had no expectancy of ongoing business relations with DePizzo, as all express contracts, which took the form of engagement letters, had been fulfilled. Therefore, appellee's privilege negated any claim that could be brought by appellant for tortious interference with a business relationship between it and DePizzo. Appellant's second assignment of error lacks merit.

For the foregoing reasons, the decision of the trial court is affirmed.

*Judgment affirmed.*

WAITE, J., concurs.

Cox, P.J., dissents.

Cox, Presiding Judge, dissenting.

I must respectfully dissent from the decision reached by the majority in this case.

Given that appellee was the moving party on the motion for summary judgment, the evidence presented must be construed most strongly in favor of appellant, as the nonmoving party. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 628 N.E.2d 1377.

I agree with appellant that absent appellee's urging that DePizzo utilize an accounting firm that it recommended in order to ensure the granting of DePizzo's loan, the past business relationship between appellant and DePizzo would have continued, as clearly appellant was the only accounting firm employed by DePizzo for numerous years. Appellant had prepared financial statements for DePizzo in the past by virtue of the annual express contracts between these parties. There was no evidence presented to indicate that during its association with appellant, DePizzo sought the services of any other accounting firm for the purpose of preparing financial statements.

The business relationship between appellant and DePizzo was governed by annual engagement letters. As the majority notes, the last such agreement between appellant and DePizzo was entered into by an engagement letter dated in January 1994. Earl Scott testified on behalf of appellant that this agreement included the preparation of a financial statement for the 1993 tax year. During the existence of the annual engagement letter in 1994, DePizzo sought to obtain a loan from appellee in the amount of $10,000,000. At the seventh month of the year-long agreement with appellant, DePizzo switched accounting firms to one recommended by appellee.

An express, written contract between two parties in a business relationship is not necessary for a claims of tortious interference with contractual relations. Appellant and DePizzo had a decade-long business relationship during which time appellant provided services for all of DePizzo's accounting needs. Clearly, the intention of these parties under the final, annual engagement letter was that appellant would continue accounting services for DePizzo for that year. Based upon their past dealings and business relationship, evidence of an implied contract was presented.

Additionally, appellee should not be permitted to benefit from granting a loan made contingent upon the utilization of a specific accounting firm recommended by appellee. Appellee required DePizzo to submit financial statements to fulfill the reporting requirements under DePizzo's requested loan agreement that were prepared by an accounting firm *acceptable* to appellee. That action took away DePizzo's right to exercise his free will to choose the accounting firm with which

he had become familiar and comfortable over the years, to provide services regarding his financial accounting needs. No evidence was presented in this case that would lend credence to appellee's asserted interest in ensuring DePizzo's creditworthiness.

To allow the actions exhibited by appellee in this case to continue would only cause issues relating to interference with contracts to arise more and more. Encouraging agencies and institutions such as appellee to promote or direct the utilization of other "in-house" type agencies, such as occurred in the case at bar, would induce an individual to forgo his right to make his own choices freely and would inhibit him from continuing a business relationship with a long-standing, trusted advisor or provider.

Viewing the facts in this case in a light most favorable to appellant as is required, genuine issues of material fact clearly existed concerning the business arrangement between appellant and DePizzo, and the extent of appellee's involvement in causing the business arrangement to cease. Therefore, I would reverse the decision of the trial court granting summary judgment in favor of appellee and remand for further proceedings.