OPINION
William Hoover appeals from the judgment of the Montgomery County Common Pleas Court wherein the trial court granted his former spouse Pamela Curtis, summary judgment upon Hoover's claim that Curtis intentionally and maliciously interfered with Hoover's contractual relationship as a licensed securities/dealer and broker with Linsco/Private Ledger (LPL).
The trial court entered a final judgment as to this claim upon its express determination that there was no just reason for delay in doing so pursuant to Civ.R. 54(B). A claim of malicious prosecution and abuse of process relating to a different incident remains pending in the trial court.
In the claim presently under review, Hoover alleged in the complaint that Curtis falsely and maliciously accused him of improper conduct in the operation of his securities business specifically relating to his alleged mismanagement of certain trust funds. Hoover claimed these false accusations by Curtis caused him to be terminated by LPL and that he lost $400,000 in income as well as damage to his reputation and severe emotional stress.
In granting summary judgment to Curtis, the trial court found that Hoover had produced no "competent" evidence demonstrating that the defendant's telephone conversation and letter to plaintiff's employer caused his termination. The trial court noted that LPL found no basis for the allegations that Hoover misused trust funds held by LPL. The trial court also noted that Hoover had only produced self-serving deposition statements that he was told by LPL that he was terminated "because I had an ex-wife who was harassing them and they could not justify the legal fees and continue this." (Hoover Dep. at 98 and 99).
The following pertinent testimony was elicited from Hoover during his discovery deposition:
 Q. Do you know what — how your employment with LPL ended? Were you terminated, were you fired, how did that end?
A. I was terminated.
Q. Okay. Was that a voluntary termination?
A. If it wasn't voluntary, they would have fired me.
Q. Okay. So you chose to resign rather than be fired?
A. Right.
 Q. Okay. Do you know, were you ever told why you were being fired or why you were being terminated?
 A. Because I had an ex-wife who was harassing them, and they could not justify the legal fees and continue this. They knew I had a nut on my hands.
 Q. Did they specifically tell you it was because of —
A. Yes.
Q. Ms. Hoover's complaints.
A. Yes.
Q. Was there any other reason?
A. No.
 Q. Were you ever told that you were let go for lack of production?
A. No.
 Q. Okay. Were you ever told that you were being let go related to other complaints by anyone else?
A. No.
 Q. All right. Who told you that you were being let go because in your phrase, you had a nut on your hands?
 A. Head of compliance, a man. I don't know what his name was right now. Could have been Michael Rusan.
Q. Runzi?
A. Runzi.
Q. Okay. Could it have been Nicholas T. Chapekis?
 A. It could have been I guess. I thought it was Michael, but it could have been.
 Q. Okay. All right. Did you speak with Mr. Runzi about this?
A. Yes, I did.
 Q. Okay. And did he also tell you that you were being fired because of Ms. Hoover's complaints?
 A. They can't afford to have something like this, because she can't spend this much time, right.
Q. Okay. That was the sole reason?
A. Yes.,
Appellant argues in his sole assignment of error that the trial court erred in granting Curtis summary judgment. Specifically, Hoover argues that a trier of fact could reasonably infer that the defendant's unfounded complaints and allegations about him caused LPL to terminate him even though there was no basis for the allegations made by the defendant. Hoover notes that he was terminated by LPL on April 2, 1997 only two weeks after Michael Runzi, Vice-President of LPL wrote Toni Curtis that LPL could find no evidence that Hoover had acted inappropriately in his capacity as trustee for Ms. Curtis's children.
The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. See Juhasz v. Quik Shops, Inc. (1977), 55 Ohio App.2d 51,57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238; Reichman v. Drake (1951),89 Ohio App. 222, 226, 45 O.O.444, 446, 100 N.E.2d 533, 536; McDonough v. Kellogg (D.C. Va. 1969), 295 F. Supp. 594, 598. See, also, Walter v. Murphy (1988), 61 Ohio App.3d 553, 573 N.E.2d 678, jurisdiction denied (1989), 41 Ohio St.3d 729, 536 N.E.2d 384, modifying Juhasz.
The Ohio Supreme Court cited the above cited authorities with approval in AB-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1.
The burden is on the moving party to demonstrate the lack of a genuine issue for trial. AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157. Although the plaintiff failed to prove the reason for his termination with admissible evidence, he did not have the burden under Civ.R. 56 to demonstrate anything. The defendant had the burden under the rule to demonstrate that the plaintiff's termination was not caused by her conduct. Dresher v. Burt (1996), 75 Ohio St.3d 280. She did not do so. She could have demonstrated that the plaintiff would not be able to produce such evidence, but she also failed to do that as well. See, Celotex Corp. v. Catrett (1986),477 U.S. 317.
The element of causation in a tortious interference with a business relationship case may, of course, be established by circumstantial evidence. Leibovitz v. Central National Bank (1944), 75 Ohio App. N25. The appellant presented evidence that he was terminated only two weeks after he was cleared of any wrongdoing as alleged by the appellee. There was evidence submitted that Hoover began his employment relationship with LPL in July 1992 and there was no direct evidence of the reason for Hoover's termination.
We agree with the appellant a reasonable jury could infer from this evidence that appellee's conduct caused the appellant to be terminated from his job with LPL. It also must be remembered that the nonmovant is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C). The assignment of error is Sustained.
The judgment of the trial court is Reversed and Remanded for further proceedings.
 _________ BROGAN, J.
GRADY, J., and YOUNG, J., concur.