UNION SAVINGS BANK, Appellant,

v.

LAWYERS TITLE INSURANCE CORPORATION et al., Appellees.

[Cite as *Union Sav. Bank v. Lawyers Title Ins. Corp.*,
191 Ohio App.3d 540, 2010-Ohio-6396.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–226.

Decided Dec. 28, 2010.

Lerner, Sampson & Rothfuss, Rick D. DeBlasis, and Cynthia M. Fischer, for appellant.

Steven E. Elder Co., L.P.A., Steven E. Elder, and Michelle L. Polly–Murphy, for appellee Lawyers Title Insurance Corporation.

SADLER, Judge.

{¶ 1} Plaintiff-appellant, Union Savings Bank ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which granted summary

judgment to defendant-appellee, Lawyers Title Insurance Corporation ("appellee"), on appellant's claims for breach of contract, negligence, and breach of fiduciary duty. For the following reasons, we reverse as to appellant's breach-of-contract claim, but affirm as to appellant's negligence and breach-of-fiduciary-duty claims.

{¶ 2} In May 2003, Jerry and Jacqueline Benis filed a loan application with appellant, seeking to refinance the first mortgage on their home. Their loan application advised appellant that besides their first mortgage with Wells Fargo, they had an outstanding mortgage with Fifth Third Bank ("Fifth Third"). Appellant thereafter submitted a written request for title commitment from appellee, with whom it had a long-standing business relationship. In the request, appellant advised appellee of the Wells Fargo first mortgage and the outstanding Fifth Third mortgage. Appellee's subsequent title search revealed, however, that Fifth Third had two outstanding mortgages on the property. Lawrence Press, appellee's assistant area manager, prepared a written title opinion and provided it to appellant on June 19, 2003. The title opinion identified three outstanding mortgages on the property: (1) a mortgage to Fifth Third, recorded on May 25, 2001, to secure the original principal amount of $140,000, (2) a mortgage to Prospect Bank (assigned to Wells Fargo), recorded on October 28, 2002, to secure the original principal amount of $275,000, and (3) a mortgage to Fifth Third, recorded on January 7, 2003, to secure the original principal amount of $52,000.

{¶ 3} Prior to closing on the loan, appellant, on August 14, 2003, provided appellee with written closing instructions, which directed appellee to "p/o Wells Fargo" and "subn. 5/3d." The parties agree that "subn. 5/3d" means "subordinate Fifth Third Bank." The closing instructions also directed appellee to fax a copy of the title work, the HUD–1 settlement statement, the initial escrow disclosure, and appellee's funding sheet for review by appellant before the closing.

{¶ 4} Thereafter, a subordination request was submitted to Fifth Third requesting subordination of only the outstanding mortgage recorded on January 7, 2003. Thereafter, a subordination agreement was prepared, subordinating only that mortgage. The subordination agreement, executed on August 12, 2003, was signed by representatives of Fifth Third that same day. Appellee closed the loan on August 18, 2003. The settlement statement prepared by appellee in connection with the closing indicates that appellee received a closing fee of $175, a title examination fee of $75, and a recording handling fee of $15. Laura Sheets, an operations manager with appellant, signed the subordination agreement on September 8, 2003.

{¶ 5} Approximately two years later, the Benises defaulted on their loan with appellant. In appellant's ensuing foreclosure action, the Fifth Third lien omitted

from the subordination agreement was determined to take priority over appellant's mortgage.[1] At the subsequent sheriff's sale, $194,161.36 of sale proceeds were distributed to satisfy the unsubordinated Fifth Third lien.

{¶ 6} On May 23, 2008, appellant filed a complaint against appellee for negligence and breach of contract. On March 26, 2009, appellant filed an amended complaint adding a claim for breach of fiduciary duty. Appellant's negligence claim asserted that appellee, acting as appellant's escrow/closing agent, had a duty to properly close the loan, and breached that duty by failing to ensure that appellant's mortgage had first priority over all other liens and encumbrances and/or to ensure that all other liens were paid in full. Appellant's breach-of-contract claim asserted that a contract existed between appellant and appellee and that appellee breached the contract by failing to ensure that appellant's mortgage had first priority over all other liens and encumbrances and/or by failing to ensure that all other liens were paid in full. Appellant's breach-of-fiduciary claim asserted that a fiduciary relationship existed between appellant and appellee and that appellee breached the duty by (1) failing to close the loan with the ordinary skill and diligence reasonably expected of an escrow agent, (2) failing to follow the closing instructions provided by appellant, (3) failing to seek clarification of any ambiguous instructions provided by appellant, and (4) failing to ensure that appellant's mortgage had first priority over all other liens and encumbrances and/or to ensure that all other liens were paid in full.

{¶ 7} Appellee filed a motion for summary judgment on June 26, 2009. On July 9, 2009, appellant filed a combined memorandum opposing appellee's motion for summary judgment and cross-motion for summary judgment. However, on July 9, 2009, the trial court filed a sua sponte order striking appellee's summary-judgment motion for failure to comply with Loc.R. 12.01 of the Franklin County Court of Common Pleas.

{¶ 8} Thereafter, on July 21, 2009, appellee filed a conforming motion for summary judgment. Appellee asserted several arguments, three of which are pertinent here. Appellee first argued that appellant's negligence and breach-of-fiduciary-duty claims were barred by the four-year statute of limitations set forth in R.C. 2305.09(D). Appellee argued that appellant's tort claims accrued on August 18, 2003, the date of the closing or, at the very latest, on September 8, 2003, when appellant's representative executed the subordination agreement. Appellee argued that as of those dates, appellant knew or should have known that although two separate Fifth Third mortgages encumbered the property, only one had been subordinated. Accordingly, argued appellee, appellant's tort claims, filed March 26, 2009, were barred by the applicable statute of limitations.

---

1. Fifth Third assigned this mortgage to Premcor IV, L.L.C., prior to appellant's foreclosure.

{¶ 9} Appellee next argued that appellant's breach-of-contract claim failed because no contractual relationship existed between the parties, as the parties had not executed a formal escrow agreement setting forth their relationship and responsibilities. Appellee further asserted that even if appellant's closing instructions were to be construed as a contract, that contract was ambiguous because it mentioned only one Fifth Third mortgage, did not provide any recording information for the mortgage or account number, and did not indicate that appellant's mortgage was to be in first-lien position.

{¶ 10} Finally, appellee argued that because there was no contractual relationship between it and appellant, and because appellant sought only economic damages related to the unsubordinated Fifth Third mortgage, the economic-loss rule barred appellant's tort claims.

{¶ 11} On July 30, 2009, appellant filed a combined memorandum opposing appellee's motion for summary judgment and a cross-motion for summary judgment. Appellant first asserted that a valid contract existed between it and appellee, evidenced by the fact that appellant had asked appellee to perform the loan closing by sending appellee the request for title commitment, and appellee agreed by performing the closing and being paid for that service. Appellant argued that this contractual relationship required appellee to comply with appellant's written closing instructions. Appellant denied that its closing instructions were ambiguous, arguing that the only reasonable interpretation of the instruction to "subn. 5/3"—given that appellee was aware of the two outstanding Fifth Third mortgages—was that appellee was to subordinate, or at least confirm the subordination of, both Fifth Third mortgages.

{¶ 12} Appellant next asserted that appellee's statute-of-limitations defense was without merit. Appellant argued that its tort causes of action did not accrue at the time of the loan closing because at that point, appellant had suffered no determinable damages. Appellant argued that its tort claims were not ripe, and, thus, the statute of limitations did not begin to run until it suffered determinable damages on March 17, 2008, the day the payout of the sheriff's-sale proceeds occurred and Fifth Third's unsubordinated lien took priority over appellant's lien.

{¶ 13} Finally, appellant asserted that the economic-loss rule did not preclude its tort claims.

{¶ 14} On March 8, 2010, the trial court issued a decision and entry that (1) granted appellee's July 21, 2009 motion for summary judgment, (2) denied as moot appellee's June 26, 2009 motion for summary judgment, and (3) denied appellant's July 9, 2009 and July 30, 2009 cross-motions for summary judgment. As pertinent here, the trial court found that no contractual relationship existed between appellant and appellee and that both the applicable statute of limitations

and the economic-loss rule barred appellant's negligence and breach-of-fiduciary-duty claims. The trial court filed its final journal entry on March 17, 2010.

{¶ 15} Appellant timely appeals, raising three assignments of error:

The trial court erred in granting defendant-appellee Lawyers Title Insurance Corporation's motion for summary judgment by finding that there was no contract between Union and Lawyers Title.

The trial court erred in granting defendant-appellee Lawyers Title Insurance Corporation's motion for summary judgment by finding that the statute of limitations barred Union's negligence and breach of fiduciary duty claims.

The trial court erred in granting defendant-appellee Lawyers Title Insurance Corporation's motion for summary judgment by finding that the economic–loss rule barred Union's negligence and breach of fiduciary duty claims.

{¶ 16} As all three of appellant's assignments of error challenge the trial court's grant of summary judgment to appellee, we begin by setting forth the familiar standard governing summary judgment. Summary judgment is appropriate only when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 17} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce competent evidence of the types listed in Civ.R. 56(C) demonstrating that there is a genuine issue for trial. Id.; Civ.R. 56(E). Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 18} Appellate review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Thus, we apply the same standard as the trial court and conduct an independent

review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765.

{¶ 19} Appellant's first assignment of error contends that the trial court erred in granting appellee's motion for summary judgment on its breach-of-contract claim on grounds that no contract existed between the parties. The trial court found that appellant failed to demonstrate that there was a meeting of the minds between the parties or that there was any type of formal agreement that established the relationship and duties between the parties. The court further found that appellant failed to demonstrate that any consideration was paid by appellant. The court concluded that because appellant had failed to demonstrate the existence of a contract, an essential element of its breach-of-contract claim, appellee was entitled to summary judgment on that claim.

{¶ 20} The elements of a contract include offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and consideration. *Lake Land Emp. Group of Akron, L.L.C. v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 14, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. Courts generally determine the existence of a contract as a matter of law. *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605, ¶ 7, citing *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 12. This court reviews questions of law regarding the existence of a contract de novo. *Motorists Mut.* at ¶ 7, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431.

{¶ 21} Appellant contends that the circumstances surrounding the loan transaction, including the documentation and parties' conduct associated therewith, along with the parties' long-standing business relationship with regard to mortgage-loan closings, demonstrate that appellant and appellee had an implied contract whereby appellee agreed to act as escrow agent for appellant. Ohio law recognizes three types of contracts: express, implied in fact, and implied in law. *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909, ¶ 56, citing *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257. "While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract." *Reali, Giampetro & Scott v. Soc. Natl. Bank* (1999), 133 Ohio App.3d 844, 849, 729 N.E.2d 1259. In an express contract, the assent to the terms of the contract is formally expressed in the offer and acceptance of the parties. Id., citing *Legros*. However, in an implied contract, no such formal offer and acceptance occur and no express agreement exists. *Reali*. "Unlike express contracts,

implied contracts are not created or evidenced by explicit agreement of the parties; rather, they are implied by law as a matter of reason and justice." *Fouty* at ¶ 56, citing *B & J Jacobs Co. v. Ohio Air, Inc.,* 1st Dist. No. C–020264, 2003-Ohio-4835, 2003 WL 22103385, ¶ 9. "An implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement." Id. " 'In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding.' " *Waffen v. Summers,* 6th Dist. No. OT–08–034, 2009-Ohio-2940, 2009 WL 1741731, ¶ 31, quoting *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 14 N.E.2d 923.

{¶ 22} " 'The main function of an escrow agent is to hold documents and funds until the conditions of the purchase agreement are met whereupon the escrow agent releases the documents and funds.' " Id. at ¶ 32, quoting *Saad v. Rodriguez* (1986), 30 Ohio App.3d 156, 158, 30 OBR 275, 506 N.E.2d 1230. Ohio courts have held that escrow agreements do not have to be in writing. In *Waffen* at ¶ 30, the court specifically discussed implied escrow agreements:

No precise form of words is necessary to constitute an escrow. The term "escrow" need not be used. * * * Thus, whether an escrow exists in any case depends not so much upon the terms the parties may use as upon the intent with which the deed or paper is deposited in the hands of a third party.

{¶ 23} As noted above, the trial court determined that appellant's breach-of-contract claim failed because there was no meeting of the minds between the parties or any formal agreement that established the relationship and duties between the parties and that no consideration was paid by appellant. It does not appear that the trial court considered whether the conduct of the parties or circumstances surrounding the loan closing established that the parties entered into a contractual relationship despite the absence of any formal agreement. Such circumstances must be considered before the court can rule on whether a contract implied in fact exists between the parties. We further note that the trial court erroneously concluded that no consideration was paid by appellant because the Benises paid for appellee's title services. "In general, if the consideration given is sufficient to support a contract it does not matter from or to whom it moves. The consideration may be given to the promisor or a third person or may be given by the promisee or a third person." *Coldwell Banker Residential Real Estate Servs. v. Bishop* (1985), 26 Ohio App.3d 149, 151, 26 OBR 366, 498 N.E.2d 1382. Because the trial court did not consider whether an implied-in-fact contract existed between the parties and erroneously concluded that appellant had paid no consideration, the court erred in granting summary

judgment on appellant's breach-of-contract claim. The first assignment of error is sustained.

{¶ 24} Appellant's second assignment of error asserts that the trial court erred in finding that the four-year statute of limitations set forth in R.C. 2305.09(D) barred appellant's negligence and breach-of-fiduciary-duty claims. We disagree.

{¶ 25} Initially, we note that the parties do not dispute that the applicable limitations period for both the negligence and breach-of-fiduciary-duty claims is four years, as set forth in R.C. 2305.09(D). "Generally, a cause of action accrues at the time the wrongful act is committed." *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377. Here, appellee's alleged negligence and breach of fiduciary duty occurred when appellee allegedly failed to subordinate both Fifth Third mortgages at the time of the closing on August 18, 2003. Applying the four-year statute of limitations from the time of appellee's alleged negligence and breach of fiduciary duty, appellant had until August 18, 2007, to file its claims. However, appellant did not file its amended complaint until July 2009.

{¶ 26} Appellant contends, however, that the limitations period did not begin to run until it suffered determinable damages on March 17, 2008, the day the payout of the sheriff's sale proceeds occurred and Fifth Third's lien took priority over appellant's lien. In essence, appellant urges this court to apply the "discovery rule," or what has been alternatively termed a "delayed damages" rule, to this matter.

{¶ 27} Appellant relies upon *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147, in support of its delayed-damages theory. In that case, Velotta alleged that the builder of his new home negligently installed underground drainage tile. Five years after the tile was installed, Velotta began experiencing serious water-drainage problems. The trial court determined that Velotta's claim was barred by the four-year statute of limitations set forth in R.C. 2305.09(D), and the court of appeals affirmed. The Supreme Court of Ohio reversed, holding that the builder's conduct was not harmful until the actual damage occurred. "When negligence does not immediately result in damages, a cause of action for damages arising from negligent construction does not accrue until actual injury or damage ensues." Id. at paragraph two of the syllabus. Accordingly, even though the builder's conduct occurred more than four years earlier, Velotta's damages were "delayed" until the basement flooded; thus, the limitations period did not commence until that time. Id.

{¶ 28} Appellant appears to rely on *Velotta* in an attempt to distinguish its delayed-damage theory from the discovery rule. "The 'discovery rule' gener-

ally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206. In *Investors REIT One*, the Supreme Court of Ohio determined that the discovery rule is not applicable to negligence claims brought under R.C. 2305.09(D). Id. at 181. Specifically, the court held that "[t]he General Assembly's failure to include general negligence claims under the discovery rule set out in R.C. 2305.09 argues strongly that it was not the legislature's intent to apply the discovery rule to such claims. * * * The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute." Id. at 181. In *Hirschl v. Evans* (Mar. 27, 1996), 7th Dist. No. 94 C.A. 43, 1996 WL 146090, the court interpreted *Investors REIT One* to mean that a claim for breach of fiduciary duty accrues when the act or omission constituting the breach actually occurs and that the discovery rule does not apply to such claims.

{¶ 29} This court has rejected the delayed-damage theory. " 'The statute of limitations commences to run as soon as the injurious act complained of is committed; delayed damage is ineffective to delay the accrual of a cause of action predicated upon a wrongful act.' " *Dublin v. Bansek,* 10th Dist. No. 10AP–14, 2010-Ohio-2372, 2010 WL 2162645, ¶ 8, quoting *Ohio Assn. of Pub. School Emps. v. Liberty Moving & Storage, Inc.* (Dec. 20, 1984), 10th Dist. No. 84AP–605, 1984 WL 6040. See also *Fronczak v. Arthur Andersen, L.L.P.* (1997), 124 Ohio App.3d 240, 243, 705 N.E.2d 1283 (delayed-damages theory precluded by *Investors REIT One* ).

{¶ 30} In *Chandler v. Schriml* (May 25, 2000), 10th Dist. No. 99AP–1006, 2000 WL 675123, the owners of a duplex and the real estate company that listed the duplex for sale represented to the buyer, Chandler, that the duplex was properly used as a two-family unit for zoning purposes. Based upon that representation, Chandler closed on the duplex on April 26, 1994. In April 1998, Chandler decided to sell the duplex and discovered that in fact, it was zoned only for single-family use, not dual-family use. On August 7, 1998, Chandler filed a complaint alleging negligent misrepresentation against the duplex owners and the real estate company. The trial court granted summary judgment against Chandler, finding that his negligent-misrepresentation claim was time-barred because he did not initiate it within the four-year limitations period set forth in R.C. 2305.09. Specifically, the court found that the cause of action accrued when the real estate company made the representations to Chandler, more than fours years before Chandler filed his lawsuit.

{¶ 31} On appeal, Chandler argued that his claim was not time-barred since it did not accrue until he suffered damages, which was when he discovered that the property was not zoned for dual-family use. We found Chandler's attempt to distinguish the discovery rule from the delayed-damages rule to be irrelevant because Chandler did not suffer delayed damages, as he asserted. Specifically, we found that Chandler suffered damages at the time he purchased the duplex, and his cause of action arose at the time of the negligent misrepresentation. We noted initially that the Supreme Court of Ohio has confined application of the *Velotta* delayed-damages theory to construction cases. We thereafter reasoned as follows:

> Chandler alleged in his complaint that he would not have purchased the duplex for the amount paid had he known that the duplex was zoned for single-family use. From the time he closed on the property, Chandler owned less than he believed. Thus, Chandler's injury occurred at the closing on April 26, 1994. The fact that Chandler did not realize his injury until much later does not change the fact that the financial injury occurred at the closing.

*Chandler* at *4. We thus affirmed the trial court's decision finding that Chandler's negligent-misrepresentation claim was time-barred under R.C. 2305.09(D).

{¶ 32} As in *Chandler*, we find that appellant's argument in support of delayed damages is irrelevant because appellant did not suffer delayed damages. Appellant suffered damages at the time of the closing in August 2003, when it assumed a second lien position due to the failure to subordinate both Fifth Third liens, and its cause of action for negligence and breach of fiduciary duty arose at that time. That appellant did not realize damages until the foreclosure action in March 2008 does not change the fact that appellant suffered damages at the time of the closing.

{¶ 33} Accordingly, appellant's claims were subject to a four-year statute of limitations commencing on August 18, 2003, at the time of the alleged negligence and breach of fiduciary duty. Appellant's amended complaint was not filed until July 2009, well after the four-year period. Accordingly, the trial court did not err in granting appellee's motion for summary judgment on appellant's negligence and breach-of-fiduciary-duty claims on grounds that those claims are time-barred by R.C. 2305.09(D). The second assignment of error is overruled.

{¶ 34} Appellant's third assignment of error argues that the trial court erred in determining that the economic-loss rule barred appellant's negligence and breach-of-fiduciary-duty claims. Our conclusion that the trial court properly determined that appellant's negligence and breach-of-fiduciary-duty claims are time-barred by R.C. 2305.09(D) renders appellant's argument moot. App.R. 12(A)(1)(c). The third assignment of error is thus overruled as moot.

{¶ 35} For the foregoing reasons, appellant's first assignment is sustained, the second assignment of error is overruled, and the third assignment of error is overruled as moot. The judgment of the Franklin County Court of Common Pleas is hereby affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

Judgment affirmed in part<br>
and reversed in part,<br>
and cause remanded.

TYACK, P.J., and BROWN, J., concur.