**INHALATION PLASTICS, INC. et al.,**
**Plaintiffs/Counter–Defendants–**
**Appellants,**

v.

**MEDEX CARDIO–PULMONARY, INC.**
**et al., Defendants/Counter–**
**Plaintiffs–Appellees.**

Nos. 14–3946, 14–3947.

United States Court of Appeals,
Sixth Circuit.

Feb. 10, 2016.

Before: MOORE and COOK, Circuit Judges; PEARSON, District Judge.*

KAREN NELSON MOORE, Circuit Judge.

This consolidated appeal arises out of a contract dispute between two medical device manufacturers: Medex Cardio–Pulmonary, Inc. ("Medex CP") and Inhalation Plastics, Inc. ("IPI"). In 2002, Medex CP and IPI entered into two agreements through which Medex CP purchased and leased IPI's assets. Both agreements contained anti-assignment provisions. In 2005, Medex CP's upstream parent merged with a subsidiary of Smiths Medical Limited Holdco ("SMLH"), another medical supply manufacturer. SMLH also owned Smiths Medical ASD, Inc. ("Smiths Medical ASD"), a competitor of IPI. IPI alleges that, in the wake of the merger, Medex CP impermissibly "assigned" the assets it acquired and leased from IPI to Smiths Medical ASD. Medex CP counters that there was no "assignment" at all—just a merger, which by law does not effect an assignment.

IPI sued Medex CP and Smiths Medical ASD (together, "Medex/Smiths"). Medex/Smiths filed counterclaims against IPI

* The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

and two IPI executives, Walter and David Levine (together, "IPI/Levines"). The district court granted partial summary judgment to Medex/Smiths on the counts contained in IPI's complaint, and partial summary judgment to IPI/Levines on Medex/Smiths's counterclaims. Over a year later, the district court partially granted Medex/Smiths's motion to certify the resolved claims for immediate appellate review under Federal Rule of Civil Procedure 54(b). IPI/Levines argue that the certification order was erroneous.[1] Medex/Smiths disagree and urge this court to affirm the district court's entry of summary judgment on the certified claims. For the reasons set forth below, we **AFFIRM** the district court's entry of summary judgment on the certified claims.

## I. FACTS AND PROCEDURE

The history of this case is long, complicated, and recounted in detail in the district court's March 13, 2013 and August 18, 2014 opinions. *See* R. 251 (3/13/13 Op. and Order at 2–5) (Page ID # 8648–51); R. 313 (8/18/14 Op. and Order at 2–5) (Page ID # 9842–45). We provide an abbreviated account below.

### A. Facts

#### 1. Medex CP and IPI enter into the APA and Production Lease.

IPI and Medex CP both manufacture and distribute medical products. R. 251 (3/13/13 Op. and Order at 2) (Page ID # 8648). On May 10, 2002, IPI and Medex CP entered into two agreements through which Medex CP acquired and leased IPI's assets: the Asset Purchase Agreement ("APA") and the Machinery and Equipment Production Lease ("Production Lease"). R. 187–1 (Asset Purchase Agreement ("APA")) (Page ID # 2498); R. 187–2 (Machinery and Equipment Production Lease ("Production Lease")) (Page ID # 2523).

Through the APA, Medex CP acquired "all of those assets, rights and properties, which are used in or are related to [IPI's] Business or are necessary for the operation of the Business." R. 187–1 (APA § 1.1) (Page ID # 2499). Pursuant to the Production Lease, Medex CP leased "machinery, equipment and other assets" at IPI's Chicago manufacturing facility in order to produce IPI's medical products. R. 187–2 (Production Lease ¶ 1) (Page ID # 2523); R. 251 (3/13/13 Op. and Order at 2) (Page ID # 8648).

Both the APA and the Production Lease contained anti-assignment provisions. The APA contained one such provision that covered both Medex CP and IPI:

> **8.5** *No Assignment.* Neither this Agreement nor any rights or obligations under it are assignable without the prior written consent of the other party.

R. 187–1 (APA § 8.5) (Page ID # 2520). The Production Lease contained two anti-assignment provisions: one applied to IPI ("Lessor"), the other to Medex CP ("Lessee"). IPI's provision stated, in relevant part:

> **20. ASSIGNMENT BY LESSOR.** Lessor shall have no right to assign, pledge, transfer, mortgage or otherwise convey any of its interests hereunder or in any Equipment, in whole or in part, without notice to, and consent of, Lessee.

---

1. IPI and Walter Levine (14–3946) and David Levine (14–3947) filed separate Civil Appeal Statements in this case. 6th Cir. R. 3 (14–3946) (Amended Civil Appeal Statement—IPI and Walter Levine); 6th Cir. R. 10 (14–3947) (Civil Appeal Statement—David Levine). We consolidated the two appeals on October 28, 2014. 6th Cir. R. 13 (14–3947) (10/28/14 Order).

R. 187–2 (Production Lease ¶ 20) (Page ID # 2529). Medex CP's provision was much narrower. It provided, in relevant part:

**21. ASSIGNMENT OR SUBLEASE BY LESSEE.** Without Lessor's prior written consent, Lessee shall not assign this Agreement or any schedule or assign its rights in or sublet the [E]quipment or any interest therein; provided, however, that Lessee may sublease or assign all or any part of the Equipment to an affiliate or a wholly-owned subsidiary of Lessee if [certain conditions are met].

*Id.* ¶ 21 (Page ID # 2529).

IPI's President, Walter Levine, and its Vice President of Sales and Marketing and Corporate Secretary, David Levine, signed a Guaranty pursuant to which they "agree[d] to indemnify and hold harmless [Medex CP], its successors, subsidiaries, affiliates and assigns … from all injury, expense or loss arising directly or indirectly from … any representation or warranty or the breach of any … such covenant" contained in the APA or Production Lease. R. 187–3 (Guaranty) (Page ID # 2532); R. 251 (3/13/13 Op. and Order at 2) (Page ID # 8648).

**2. Medex CP's upstream parent, MedVest, merges with an SMLH subsidiary.**

At the time it entered into the APA and Production Lease, Medex CP was owned by Medex, Inc., a subsidiary of MedVest Holdings Corporation ("MedVest"). R. 251 (3/13/13 Op. and Order at 3) (Page ID # 8649). In March 2005, MedVest merged with Forest Acquisition Corp. ("Forest"), a subsidiary of SMLH; MedVest was the "surviving corporation" under this merger. *Id.;* R. 311–3 (Agreement and Plan of Merger § 2.01) (Page ID # 9796). SMLH also owned another medical device manufacturer, Smiths Medical ASD—a competitor of IPI. R. 185 (Third Am. Compl. at 4) (Page ID # 2445); R. 208 (Def.'s Mot. for Partial Summ. J. at 9) (Page ID # 3613).

In 2005, Medex CP filed a certificate with the Ohio Secretary of State to register "Smiths Medical" as its "Fictitious Name." R. 251 (3/13/13 Op. and Order at 31) (Page ID # 8677); R. 226–17 (8/18/05 Name Registration Certificate at 2) (Page ID # 8197). Thereafter, Medex CP started doing business in Ohio under the name "Smiths Medical." R. 251 (3/13/13 Op. and Order at 31) (Page ID # 8677).

**3. IPI accuses Medex CP of breaching the anti-assignment provisions.**

The merger triggered the parties' instant dispute. IPI alleges that in the wake of the merger, "Medex CP transferred or assigned the IPI business, along with the IPI assets and machinery and equipment, to Smiths Medical [ASD]" without obtaining IPI's prior consent. R. 217 (Mot. for Summ. J. of IPI and Walter Levine at 5) (Page ID # 5747). By IPI's account, "Medex permitted Smiths Medical to take over all of its business operations and allowed it to assume and to succeed to all of its rights, duties, assets and liabilities"—including those rights, duties, assets, and liabilities that Medex CP had purchased or leased from IPI. R. 185 (Third Am. Compl. at 4) (Page ID # 2445); *see* R. 217 (Mot. for Summ. J. of IPI and Walter Levine at 5) (Page ID # 5747) ("Medex CP transferred or assigned the IPI business, along with the IPI assets and machinery and equipment, to Smiths Medical [ASD].").

Walter Levine objected to this alleged assignment. He told Medex CP's then-President Dominick Arena: (1) that he would quit his job and (2) that IPI would sue Medex CP for breach of contract. R. 185 (Third Am. Compl. at 8) (Page ID

# 2449); R. 208 (Def.'s Mot. for Partial Summ. J. at 10–11) (Page ID # 3614–15). In response, IPI claims, Arena orally offered to pay Walter between $7 million and $10 million if he remained employed and refrained from suing Medex CP. R. 251 (3/13/13 Op. and Order at 23) (Page ID # 8669). Arena never paid Walter, and this suit followed.

## B. Procedural History

### 1. IPI sues Medex/Smiths, and Medex/Smiths file counterclaims.

IPI sued Medex CP on February 15, 2007. R. 2 (Complaint) (Page ID # 2). In its Third Amended Complaint—the operative complaint in this case—IPI added Smiths Medical ASD as a defendant. R. 185 (Third Am. Compl.) (Page ID # 2442). The Third Amended Complaint contained three counts: breach of oral contract against Medex CP (Count I); breach of written contract against Medex CP (Count II); and a derivative successor liability claim against Smiths Medical ASD (Count III). *Id.* at 7–18 (Page ID # 2448–59).

Medex CP and Smiths Medical ASD filed separate answers and counterclaims in response to the Third Amended Complaint. R. 187 (Def. Smiths Medical ASD, Inc.'s Answer) (Page ID # 2464); R. 188 (Def. Medex CP, Inc.'s Answer) (Page ID # 2533). Both named Walter and David Levine as counter-defendants, and both asserted four identical counterclaims: breach of contract against IPI (Counterclaim I); fraudulent inducement against IPI (Counterclaim II); fraud against IPI (Counterclaim III); and breach of contract against the Levines (Counterclaim IV). R. 187 (Def. Smiths Medical ASD, Inc.'s Answer at 25–32) (Page ID # 2488–95); R. 188 (Def. Medex CP, Inc.'s Answer at 27–34) (Page ID # 2559–66).

### 2. The district court grants partial summary judgment to Medex/Smiths and IPI/Levines.

On March 30, 2012, Medex/Smiths filed a joint motion for partial summary judgment. R. 208 (Medex CP and Smith Medical ASD's Mot. for Partial Summ. J.) (Page ID # 3598). They sought summary judgment on: (1) Count I of the Third Amended Complaint; and (2) Count II of the same, insofar as it alleged that Medex/Smiths had breached the anti-assignment provisions of the APA and Production Lease. *Id.* at 12–27 (Page ID # 3616–31). IPI/Levines responded with two separate motions for partial summary judgment. IPI and Walter sought partial summary judgment on: (1) Counts II and III of the Third Amended Complaint, insofar as they alleged that Medex/Smiths had breached the anti-assignment provisions; and (2) all four of Medex/Smiths's Counterclaims. R. 217 (Mot. for Summ. J. of IPI and Walter Levine at 12–20) (Page ID # 5754–62). David moved for summary judgment on Medex/Smiths's Counterclaim IV. R. 218 (David Levine's Mot. for Summ. J. at 1) (Page ID # 6651).

The district court issued an order granting in part and denying in part the parties' summary judgment motions on March 13, 2013. R. 251 (3/13/13 Op. and Order) (Page ID # 8647). That order *granted* summary judgment in favor of Medex/Smiths on Count I, the anti-assignment portion of Count II, and the related parts of Count III. *Id.* at 27, 32–33 (Page ID # 8673, 8678–79). It also *granted* summary judgment in favor of IPI/Levines on Counterclaims II and III. *Id.* at 38 (Page ID # 8684). The district court *denied* IPI/Levines' requests for summary judgment on Counterclaims I and IV. *Id.* at 37–39 (Page ID # 8683–85).

### 3. The district court grants Medex/Smiths's Rule 54(b) certification motion in part.

On April 29, 2014, Medex/Smiths moved to certify the district court's summary judgment dispositions of Counts I–III, Counterclaims II and III, and part of Counterclaim I for immediate review under Rule 54(b). R. 305 (Medex CP's and Smiths Medical's Mot. for Certification Pursuant to F.R.C.P. 54(b) at 10–11) (Page ID # 9583–84). IPI/Levines filed two separate opposition motions. R. 306 (David Levine's Mem. in Opp.) (Page ID # 9609); R. 307 (IPI, Inc.'s Mem. in Opp.) (Page ID # 9611).

On August 18, 2014, the district court granted in part and denied in part Medex/Smiths's certification motion. R. 313 (8/14/14 Op. and Order at 21) (Page ID # 9861). Pursuant to Rule 54(b), the district court certified its entry of summary judgment on Count I and its entry of partial summary judgment on Counts II and III for immediate appellate review, but did not certify its rulings on any of the Counterclaims. *Id.* at 8–17 (Page ID # 9848–57).

## II. ANALYSIS

This appeal presents us with two questions. First, did the district court properly certify some, but not all, of the claims in this case for immediate review pursuant to Rule 54(b)? Second, assuming that the district court's Rule 54(b) order was correct, did the district court properly enter summary judgment in favor of Medex/Smiths on the certified claims? Because we answer "yes" to both questions,

we affirm the district court's entry of summary judgment on the certified claims.[2]

### A. Rule 54(b) Certification

Rule 54(b) provides, in relevant part:

When an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed.R.Civ.P. 54(b). "For simplicity of exposition," we refer to a district court's satisfaction of these two requirements—(1) entering a final judgment disposing of only some claims or parties in a case and (2) finding "no just reason" to delay review of that judgment—"as a 'certification' that a particular judgment is ripe for review." 10 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2660 (3d ed.2015); *see Gelboim v. Bank of Am. Corp.,* —— U.S. ——, 135 S.Ct. 897, 906, 190 L.Ed.2d 789 (2015) ("District courts may grant certifications under [Rule 54(b)], thereby enabling plaintiffs in actions that have not been dismissed in their entirety to pursue immediate appellate review.").

Accordingly, "[p]roper certification under Rule 54(b) is a two-step process," and we review each step under a different standard. *Planned Parenthood Sw. Ohio Region v. DeWine,* 696 F.3d 490, 500 (6th Cir.2012). "First, the district court must expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case." *Id.* (quoting *Gen. Acquisition, Inc. v. GenCorp,*

---

**2.** IPI/Levines urge us to hold that the certification order was impermissibly *narrow* but still address the merits of *all* of the Counts and Counterclaims the district court considered on summary judgment. We cannot do

that: "If Rule 54(b) certification is not properly entered, a final order does not exist from which an appeal can be taken, and we lack jurisdiction." *U.S. Citizens Ass'n v. Sebelius,* 705 F.3d 588, 594 (6th Cir.2013).

*Inc.*, 23 F.3d 1022, 1026 (6th Cir.1994)). Importantly, Rule 54(b) does not require a district court to *"enter* the partial final judgment in its certification of an immediate appeal pursuant to Rule 54(b)." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir.2002). Rather, the court "simply must *recognize* that such a partial final judgment has been entered." *Id.* We review this first step de novo. *Planned Parenthood*, 696 F.3d at 500.

"Second, the district court must expressly determine that there is no just reason to delay appellate review." *Id.* (quoting *Gen. Acquisition*, 23 F.3d at 1026). We review this second step for an abuse of discretion. *Id.*

The district court satisfied both steps for Rule 54(b) certification. First, it determined that the March 13, 2013 summary judgment order granted final judgment to some, but not all, of the claims in this case. Second, it determined that there was no just reason to delay review of those claims. We address each step in turn.

### 1. The March 13 summary judgment order directed final judgment as to some, but only some, of the claims in this case.

To certify properly claims under Rule 54(b), a district court must first "determin[e] that multiple claims exist and that one or more of them have been finally determined and may be severed from the remaining claims for the purpose of immediate appeal." *U.S. Citizens Ass'n*, 705 F.3d at 594. We usually apply the "aggregate of operative facts" test (or *"McIntyre* test") "to determine whether multiple claims exist for the purposes of Rule 54(b)." *Planned Parenthood*, 696 F.3d at 500; *see, e.g., GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir.2004); *McIntyre v. First Nat. Bank of Cincinnati*, 585 F.2d

190, 192 (6th Cir.1978). Under this test, "[a] 'claim' under Rule 54(b) 'denotes the aggregate of operative facts which give rise to a right enforceable in the courts' even if the party has raised different theories of relief.'" *GenCorp*, 390 F.3d at 442 (quoting *Gen. Acquisition, Inc.*, 23 F.3d at 1028).

■ Determining whether the district court satisfied Rule 54(b)'s first step thus presents us with two questions. First, did the district court's March 13, 2013 summary judgment order address multiple claims? Second, did that order enter final judgment for some, but not all, of those claims? Our answer to both questions is "yes."

First, the "multiple claim" analysis. The district court seemed to read the March 13, 2013 summary judgment order as addressing *five* claims: (1) Count I, (2) the part of Count III derivative of Count I, (3) the anti-assignment portion of Count II, (4) the part of Count III derivative of the anti-assignment issue, and (5) Counterclaims I–IV. R. 313 (8/18/14 Op. and Order at 12–13) (Page ID # 9852–53). This was not incorrect; however, because we review the district court's resolution of this issue de novo, *Planned Parenthood*, 696 F.3d at 500, we think the more accurate interpretation of the summary judgment order is that it addressed *three* Rule 54(b) claims, each with its own distinct aggregate of operative facts:

*Claim One* encompassed Count I of the Third Amended Complaint and the related part of Count III. Count I, IPI's oral contract claim, is principally based on a series of post-merger conversations between Arena and Walter Levine in which Arena allegedly promised to pay Walter between $7 and $10 million. R. 313 (8/18/14 Op. and Order at 9) (Page ID # 9849). The related part of Count III,

which the district court resolved on summary judgment, is entirely derivative of this claim.

*Claim Two* encompassed the anti-assignment portion of Count II and the related part of Count III. This is quite different from Claim One. Count II alleges that Medex CP breached two *written* contracts: the APA and the Production Lease. *Id.* The issue the district court considered in its March 13, 2013 summary judgment order was even narrower: Medex/Smiths sought summary judgment on Count II only insofar as it alleged violations of the *anti-assignment provisions. Id.* at 10 (Page ID # 9850). The anti-assignment claim hinges on three relatively brief written provisions in the APA and Production Lease and the corporate relationship between Medex CP and Smiths Medical ASD. Again, the related part of Count III is wholly derivative of this claim.

Finally, *Claim Three* encompassed Counterclaims I–IV. The Counterclaims share one common aggregate of operative facts, and thus constitute one Rule 54(b) claim. Counterclaims I–III all turn on the condition of the assets that Medex CP bought and leased from IPI under the APA and Production Lease. R. 313 (8/18/14 Op. and Order at 11–12) (Page ID # 9851–52). Counterclaim IV turns on a separate agreement: the Guaranty that the Levines signed contemporaneously with the APA and Production Lease. *Id.* at 11 (Page ID # 9851). However, the thrust of Counterclaim IV is that the Guaranty renders David and Walter personally liable for the damages alleged in Counterclaim I. *Id.* Thus, all four of the Counterclaims together constitute one claim under Rule 54(b).

Second, the district court's summary judgment order entered final judgment for only *two* of these three claims: Claim One and Claim Two. R. 251 (3/13/13 Op. and

Order at 21–27, 33) (Page ID # 8667–73, 79). The district court *did not* enter a final judgment that fully resolved Claim Three. Rather, the district court granted summary judgment to IPI/Levines on Counterclaims II and III, but denied summary judgment to IPI/Levines on Counterclaims I and IV. *Id.* at 37–39 (Page ID # 8683–85). Accordingly, under Rule 54(b), the district court did not enter a final judgment that disposed of Claim Three. The district court could thus not certify *any* of the Counterclaims, because the overarching Rule 54(b) claim (Counterclaims I–IV) lacked a final judgment.

In sum, the district court did just what Rule 54(b) commands. It first determined that the March 13, 2013 summary judgment order addressed multiple claims. It then determined that only some of those claims enjoyed a final judgment. That satisfies the first step for Rule 54(b) certification. *Planned Parenthood,* 696 F.3d at 500.

### 2. There was no just reason to delay review of the certified claims.

The district court also satisfied the second step for Rule 54(b) certification when it determined that there was no just reason to delay review of the certified claims. We review the district court's resolution of this second Rule 54(b) step for an abuse of discretion. *Id.* "The reviewing court may not 'reweigh the equities or reassess the facts,' but must 'make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.'" *Lowery v. Fed. Express Corp.,* 426 F.3d 817, 821 (6th Cir. 2005) (quoting *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). Thus, we "should disturb the trial court's assessment of the equities only if [we] can say that the judge's conclusion was clearly un-

reasonable." *Curtiss–Wright*, 446 U.S. at 10, 100 S.Ct. 1460.

We have identified several factors that district courts should consider in order to determine whether there is just reason for delay. They include:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Planned Parenthood*, 696 F.3d. at 503 (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir.1986)).

The district court weighed all five of these factors. R. 313 (8/18/14 Op. and Order at 7–8, 13–17) (Page ID # 9847–48, 9853–57). We find no abuse of discretion in its conclusion that there was no just reason to delay review of the certified claims. Therefore, we have appellate jurisdiction to review the grant of summary judgment on the two certified claims. We do not have jurisdiction to address any other claims.

## B.  March 13, 2013 Summary Judgment Order

"A district court's grant of summary judgment is reviewed *de novo.*" *Mullins v. Cyranek*, 805 F.3d 760, 764 (6th Cir. 2015). "Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact for trial." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir.2015).

For ease of analysis, in this section we— like the district court in its March 13, 2013 summary judgment order—refer to the three Counts from the Third Amended Complaint (instead of the two "Claims" we addressed *supra* in Part II.A). Again, the district court granted summary judgment in favor of Medex/Smiths on Count I of the Third Amended Complaint, the anti-assignment portion of Count II, and the related parts of Count III. Finding no genuine dispute of material fact as to any of these three Counts, we affirm.

### 1.  Count I:  Oral Contract

The district court properly entered summary judgment in favor of Medex/Smiths on Count I because there was no oral contract between Walter Levine and Arena. IPI alleges that after the MedVest–Forest merger, Medex CP's then-President Arena offered to pay Walter Levine between $7–$10 million if he (1) continued working and (2) did not sue Medex CP. Ohio law governs this oral contract claim. R. 22 (12/3/07 Order at 5–6) (Page ID # 250 –51). Under Ohio law, a breach of contract claim has four elements: "[T]he plaintiff must demonstrate that: (1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach." *Campbell v. George J. Igel & Co.*, 3 N.E.3d 219, 222–23 (Ohio Ct.App.2013). IPI/Levines cannot satisfy the first of these requirements: there was no oral contract.

"The elements of a contract include offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and consider-

ation." *Union Sav. Bank v. Lawyers Title Ins. Corp.,* 191 Ohio App.3d 540, 946 N.E.2d 835, 840 (2010). "A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Alligood v. Procter & Gamble Co.,* 72 Ohio App.3d 309, 594 N.E.2d 668, 669 (1991). Even viewed in the light most favorable to IPI/Levines, there was no oral contract between Arena and Walter Levine.

▮ To start, Arena never made an enforceable offer. "[A]n offer must be specific enough to form the basis for a meeting of the minds." *Callander v. Callander,* No. 07AP–746, 2008 WL 2026431, at *3 (Ohio Ct.App. May 13, 2008). Not so here. Walter Levine's recollections of his conversations with Arena make this plain. R. 207–8 (Walter Levine Dep. Tr. at 129:16–23, 133:6–11) (Page ID # 3266–67). Even when Walter seemed to recall an actual "offer," he was uncertain as to its terms. *Id.* at 140:2–20 (Page ID # 3268). His deposition testimony suggests that *neither* party to this alleged contract had a definite price term in mind. As the district court noted, "[t]he amount of [Arena's] purported settlement clearly would be an essential term," but Walter could only approximate it ($7–$10 million) within a "$3 million range [that] can only be viewed as significant and indefinite." R. 251 (3/13/13 Op. and Order at 26) (Page ID # 8672). We agree.

The record evidence regarding Arena's purported promise to pay Walter confirms "that, while Mr. Arena may have committed to trying to help Walter Levine and IPI receive millions of dollars, further action was necessary to facilitate and finalize any such settlement." *Id.* Walter admitted as much, stating at his deposition that "[t]here were several discussions where

several—at several different occasions he promised me he was moving forward on getting a payout." R. 207–8 (Walter Levine Dep. Tr. at 122:7–10) (Page ID # 3264). Although "an agreement to make an agreement is [not] *per se* unenforceable ... [t]he enforceability of such an agreement depends ... on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." *M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203, 208 (1994) (internal quotation marks omitted). Those intentions are absent here.

At bottom, IPI/Levines have been able to point to only vague, illusory promises in support of their oral contract claim. They have not demonstrated that there was a valid offer. Nor have they shown a meeting of the minds. As a matter of law, there was no enforceable oral contract between Arena and Walter Levine. The district court therefore properly entered summary judgment in favor of Medex/Smiths. on Count One.

## 2. Count II: Anti–Assignment

The district court also properly entered summary judgment in favor of Medex/Smiths on the anti-assignment portion of Count II. IPI/Levines claim that Medex CP violated the anti-assignment provisions in the APA and Production Lease when it "transfer[red] the Agreements to Smiths Medical without IPI's consent." Appellant Br. at 33; *id.* at 9 (same). The two agreements have different choice of law provisions: Ohio law governs the APA, while Illinois law governs the Production Lease. R. 187–1 (APA § 8.4) (Page ID # 2520); 187–2 (Production Lease ¶ 27) (Page ID # 2531). However, in their briefs on appeal, the parties cite only Ohio law in support of their anti-assignment arguments. The district court, too, cited only

Ohio law in its summary judgment order. R. 251 (3/13/13 Op. and Order at 27–33) (Page ID # 8673–79). We do the same.

■ We note at the outset that IPI/Levines have not articulated a coherent theory of *how* Medex/Smiths breached the anti-assignment provisions. For example, in their summary judgment motion, Walter Levine and IPI alleged that "Medex CP transferred all of the assets and machinery and equipment, together with the IPI business, to Smiths Medical [ASD]." R. 217 (Mot. for Summ. J. of IPI and Walter Levine at 15) (Page ID # 5757). We read that argument as an allegation that, post-merger, Medex CP assigned IPI's assets and rights to Smiths Medical ASD, a company that existed before and after the MedVest–Forest merger. The district court held that IPI had not introduced any evidence supporting that claim beyond "speculation." R. 251 (3/13/13 Op. and Order at 32) (Page ID # 8678). IPI/Levines' arguments on appeal are similarly speculative. They allege that "Medex CP 'assigned' the Agreements to ... Smiths Medical," but provide little additional explanation or context. Appellant Br. at 9. That is insufficient to withstand summary judgment.

Alternately, IPI/Levines might be objecting to the fact that Medex CP—doing business as "Smiths Medical"—produced IPI's product line after the merger. *Cf.* R. 251 (3/13/13 Op. and Order at 32) (Page ID # 8678) ("IPI, however, fails to acknowledge that Medex CP itself became a 'Smiths Medical entity' after the 2005 merger, insofar as it was under new corporate control and was doing business as 'Smiths Medical' as a result of the merger."). It is true that after the MedVest–Forest merger, Medex CP continued selling and producing IPI's product line, albeit "under the trade name 'Smiths Medical'"; indeed, it continues to do so today. Appel-

lee Br. at 38. However, under Ohio law, this was also not an assignment: by doing business as "Smiths Medical," Medex CP did not actually "assign" anything it acquired or leased from IPI.

Ohio merger law is clear that the transfer of rights pursuant to a merger is not an assignment. Medex CP's upstream parent—MedVest—merged with an SMLH entity, and thus Medex CP's immediate parent (Medex, Inc.) "became a subsidiary of" SMLH. R. 251 (3/13/13 Op. and Order at 30) (Page ID # 8676); *see* Ohio Rev.Code Ann. § 1701.82(A)(3) ("When a merger or consolidation becomes effective ... [t]he surviving or new entity possesses all assets and property of every description, and every interest in the assets and property ... of each constituent entity."). The merger agreement reinforces this: as a result of the merger, SMLH was the "Parent" of MedVest *and* all of its subsidiaries (including Medex CP). R. 311–3 (Agreement and Plan of Merger at 1, 12, § 6.03) (Page ID # 9786, 9795, 9820).

Accordingly, in Ohio "an anti-assignment clause has no effect in the context of a merger[,] because all obligations and rights are automatically conferred upon the new entity and no assignment is necessary." R. 251 (3/13/13 Op. and Order at 30) (Page ID # 8676). Thus, Medex CP did not breach the anti-assignment provisions because there was no assignment as a matter of law. *See, e.g., Firstsource Sols. USA, Inc. v. Harvest Info, Inc.,* No. 1:09–CV–165, 2010 WL 2598205, at *4–6 (S.D.Ohio June 24, 2010) (interpreting Ohio law and distinguishing effect of merger from that of assignment); *Transcon. Ins. Co. v. SimplexGrinnell LP,* No. 3:05CV7012, 2006 WL 2035571, at *3 (N.D.Ohio July 18, 2006) (pursuant to a merger in Ohio, contractual obligations are "transferred by operation of law ... and not by assignment"); *Wonderly v. Pepsi–*

*Cola Gen. Bottlers of Ohio, Inc.,* No. L–97–1152, 1998 WL 114363, at *2–3 (Ohio Ct. App. Mar. 6, 1998) (same).

IPI/Levines argue that cases distinguishing between mergers and assignments are inapposite because "Medex CP ... was not involved in the merger as a merging entity." Appellant Br. at 7. That is also incorrect under Ohio law: when companies merge, the surviving company "possesses all assets and property of every description, and every interest in the assets and property ... of each constituent entity." Ohio Rev.Code Ann. § 1701.82(A)(3). Medex CP was a subsidiary of Medex, Inc., which was a subsidiary of MedVest; both Medex CP and Medex, Inc. thus shared a common parent (MedVest) that was a party to the merger.

At bottom, IPI/Levines have failed to demonstrate that an assignment occurred. Medex CP does not dispute that it produces IPI's product line under the name "Smiths Medical." That, however, is not the result of an "assignment." It is the result of a merger between Medex CP's ultimate parent and a company owned by SMLH. As a matter of law, Medex CP assigned nothing, and thus did not breach the anti-assignment clauses in the APA or Production Lease. The district court properly entered summary judgment in favor of Medex/Smiths on Count II.

### 3. Count III: Successor Liability

Because Medex CP is not liable under Count I or the anti-assignment portion of Count II, Smiths Medical ASD is not liable as Medex CP's successor for either of those counts.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's entry of summary judgment in favor of Medex/Smiths on the claims certified pursuant to Rule 54(b).